Dwyer v. Mayer

*J. Michael Sheridan,* for plaintiff.
*Harry R. Mayer,* In Propria Personna.

HAZEL, *J.,* October 1, 1982—This is an action for a refund of counsel fees already paid. Trial by judge sitting without a jury was held on April 23, 1982. After a review of the evidence, arguments of counsel and memoranda of law, the court entered an order dated April 28, 1982, finding in favor of plaintiff Helga Dwyer and against defendant Harry R. Mayer, Esq., in the amount of $9,032.50 with interest at the legal rate to be computed from February 3, 1979. Exceptions were timely filed by defendant and were argued before the court en banc on July 8, 1982. The court entered an order dismissing the exceptions filed by defendant on July 27, 1982. Defendant filed a notice of appeal on August 16, 1982, thus necessitating this opinion.

I

On September 20, 1977, plaintiff Helga Dwyer and defendant Harry R. Mayer, Esq., executed a

written contingent fee agreement for defendant's representation of plaintiff for injuries which she sustained as a result of an automobile accident which occurred on August 20, 1977. The contingent fee agreement read as follows:

I hereby agree that the compensation of my attorney for services shall be determined as follows:

Twenty Five Percent of any amount recovered after the deduction of costs and expenses before the institution of suit and one third of any amount recovered after the institution of suit excluding any recovery made of the No-Fault Coverage of the Nationwide Insurance Company.

Defendant concluded an out-of-court settlement of plaintiff's claim with the insurance carrier for the driver of the car involved in the accident in the amount of $87,500. On February 3, 1979, defendant Mayer went to plaintiff's home with the settlement check in the amount of $87,500, made out to "Helga E. Dwyer and Harry Richard Mayer, Atty.", dated January 24, 1979. During this visit, plaintiff signed a "distribution sheet" prepared by defendant which read in pertinent part as follows:

Gross Proceeds of Settlement . . . . .$87,500.00
Deduct Harry R. Mayer, Esq., reimbursement for expenses of Medical Reports ($30.00) and conference fee of Dr. Trabulsi ($150.00)                              180.00

$87,320.00

Less Harry R. Mayer, Esq.,
Counsel fee at .333%                  $29,077.00

Balance due Helga E. Dwyer    $58,243.00

I hereby approve the above.
Date:        Signature: Helga Dwyer  (Seal)

Plaintiff accepted defendant's check for $58,243, the balance due plaintiff as indicated in the "distribution sheet."

In addition to the 33-1/3 percent fee charge against the gross proceeds of the settlement, defendant charged plaintiff a ten percent contingent fee for the collection of certain medical expense benefits paid by plaintiff's father's no-fault insurance carrier, Nationwide. It was stipulated to and agreed at trial that the ten percent fees from medical expenses amounted to $1,785.50. Plaintiff and/or her father paid this ten percent fee to defendant upon the submission of his bill for the same.

Plaintiff filed her complaint in assumpsit on July 21, 1980 alleging that defendant violated the terms and conditions of the September 20, 1977 contingent fee agreement in charging her a fee of 33-1/3 percent instead of 25 percent because defendant had not instituted suit on behalf of plaintiff in pursuit of her recovery against the driver's insurance company. Plaintiff claimed that $7,247 was owing to her as a result of defendant's fee overcharge, and it was stipulated to and agreed at trial that this is the amount of plaintiff's claim in the contingent fee agreement dispute.

Plaintiff further alleged that defendant illegally and excessively charged the $1,785 for obtaining no-fault benefits, there being no contract between plaintiff and defendant permitting defendant to charge such an amount for collection of no-fault benefits. (Complaint, paragraph 8). Plaintiff made a total claim of $9,032 and it was stipulated to and agreed at trial that the amount of plaintiff's claim is $9,032.50.

Defendant contends that he is entitled to both of the fees charged plaintiff as they were agreed to by the parties and were not excessive or illegal.

After reviewing the evidence adduced at trial, the arguments of counsel, and their respective legal memoranda, the court held that plaintiff was entitled to recovery and entered judgment in her favor.

## II

This case involves two separate issues:

1. Whether defendant violated the terms and conditions of the contingent fee agreement drafted by him and executed by plaintiff and whether any defenses are available to defendant which legally justify his 33-1/3 percent contingent fee charge.

2. Whether there was an agreement between the plaintiff and defendant for defendant to charge a ten percent contingent fee for the collection of medical benefits received under a no-fault insurance policy providing basic loss benefits, and, if so, whether this contingent fee is illegal under the Pennsylvania No-fault Insurance Act.

### ISSUE 1.: FACTUAL BACKGROUND

Plaintiff's father first visited defendant at defendant's home shortly after plaintiff's August 20, 1977 car accident in order to ascertain whether or not he needed legal assistance in dealing with his daughter's (plaintiff's) accident. Plaintiff's father testified that defendant indicated at this meeting that his legal fee would be "25 percent and one-third if we went to Court." At this meeting, plaintiff's father told defendant that he had Blue Cross/Blue Shield coverage and a Nationwide automobile insurance policy.

On September 20, 1977, defendant visited plaintiff in the hospital where she had been admitted for injuries sustained in the auto accident. During this visit, defendant gave plaintiff the contingent fee agreement to sign. While plaintiff admitted signing the agreement, she testified that she did not believe

that defendant "went into detail with it." Defendant testified that he agreed with his previous deposition testimony that he thought he read the agreement over to plaintiff but did not discuss it in detail with her. Defendant further testified that while he did not feel an obligation to give plaintiff a "detailed statement" of the fee arrangement, he read the agreement to plaintiff and felt sure that she "understood it."

On February 3, 1979, defendant went to plaintiff's home with the "distribution sheet" and a check for $87,500 in settlement of plaintiff's claim against the driver of the car in which plaintiff was injured. This "distribution sheet" was signed by plaintiff in the presence of defendant and plaintiff's parents, and it indicated that defendant was deducting a counsel fee of $29,077 or 33-1/3 percent, from the $87,500 "gross proceeds of the settlement." Plaintiff accepted defendant's check for the balance of $58,243.

The evidence showed that defendant did not explain the figures on the "distribution sheet" before plaintiff signed it and that neither plaintiff nor her parents questioned defendant's fee calculations.

Plaintiff testified that she did not question defendant about the "distribution sheet" because it reflected the "amount that he (defendant) said he reached, and I accepted that." Plaintiff's father testified that when he saw the 33-1/3 percent fee deduction, he assumed that defendant had "gone to Court": "I saw the 33 percent, and I figured he had instituted a suit and had gone to court or something like that."

Although defendant testified that he "went over" the figures in the sheet and had "no doubt in his mind that plaintiff understood every figure" on the

sheet, defendant admitted in cross-examination that when he gave plaintiff the "distribution sheet," he did not tell her that he had not filed suit or joined her in an action.

Plaintiff's father testified that on the day following defendant's visit, he called defendant and told him that he felt that he had been overcharged because he had no indication that defendant had filed a suit on plaintiff's behalf. Plaintiff's father further testified that defendant's reply was "What took you so long?" and "we have a fee dispute here." Plaintiff's father ascertained, on his own, that no suit had been filed on plaintiff's behalf and again called defendant alleging that he had been overcharged; defendant's response was the same as in his prior discussion with plaintiff's father.

## ISSUE 1.: DISCUSSION

Defendant claims that he is entitled to the fee of one-third that was charged and paid for settling plaintiff's liability claim; plaintiff contends that the fee should have been 25 percent of the amount recovered because defendant did not formally institute suit on her behalf. All parties agree that defendant never instituted suit on plaintiff's behalf. Defendant's position, as demonstrated by his trial testimony and legal memoranda to the court, is that at the time that the contingent fee agreement was signed by plaintiff, a mistake occurred which should allow the court to reform the agreement to mean "before the institution of suit on *behalf of any of the parties*," or that the agreement should be "construed to read that way." Defendant contends that at the time of the signing of the agreement, one month after the accident, there were many "unknowns": the extent of the other passengers' in-

juries; the amount of coverage on the driver's car; the cause of the accident; the available sources of payment; and any possible defenses by the driver. Defendant believed that he could pursue plaintiff's claim independently of the other claimants at the time the fee agreement was signed, and defendant claims that this belief was a "mistake," as it subsequently became known to him that the driver's insurance company would not settle one claim without settling all of them.

Suit was started on behalf of the other parties injured in the car accident, and their claims were eventually settled after court approval of the death action brought on behalf of one of the deceased passengers. Plaintiff's father testified that defendant had not indicated anything to him about the filing of a lawsuit. When asked by defendant at trial he would have permitted plaintiff to join in the lawsuit with the other claimants, plaintiff's father replied that he would not have.

Although defendant admitted that a settlement was reached for plaintiff without the formal institution of suit, defendant testified that "[i]n my opinion I think she was a part of that suit, in as much as if her name had been added to the complaint."

Defendant elaborated on his unique theory in his brief in support of exceptions filed with the court. Defendant maintains that "Plaintiff should be considered as being joined de jure or de facto" in the suit started on behalf of the other claimants and alleges that it would have been a "vain act" for defendant to have started suit for the purpose of extracting more money from the tort-feasor as this purpose was already being served by the institution of suit by the other parties. Defendant also referred to Pa.R.C.P. 2227, compulsory joinder, and stated

in his brief that "could it be said that defendant would not be entitled to the one-third fee if plaintiff had been joined by defendant in those proceedings, pursuant to Pa.R.C.P. 2227?". Defendant also asserts that plaintiff "would certainly have been joined by the defendant in the suit if the case had not been settled before the Statute of Limitation had run."

The unassailable fact is that defendant did not institute suit on behalf of plaintiff; whether he would have under other circumstances is irrelevant. The testimony indicates that defendant did not even discuss the possibility of instituting suit with plaintiff or her father.

Defendant's defense of mistake and his argument for "reformation" of the fee agreement must fail. Although plaintiff admitted in her pleadings that at some point "it then became known . . . that none of the claims could be settled without all of them being settled . . .", defendant failed to sustain his burden in proving the defense of mistake because he failed to prove that plaintiff labored under the same mistake, i.e., that her claim could be pursued independently at the time she signed the contingent fee agreement.

Under Pennsylvania law, a party to a contract may be relieved of his contractual obligations where he succeeds in proving that the contract was based upon a mistake of fact. This defense to contract performance will only succeed, however, where the party asserting the defense of mistake proves by clear, precise, and indubitable evidence that the mistake was mutual to all parties to the contract. Balser v. Sun Oil Company, 325 Pa. 411, 190 A. 178 (1933). Plaintiff's testimony establishes that she gave no thought whatever to the "tactics" or legal procedures involved in her claim; plaintiff

depended entirely on her father's and defendant's advice on matters relating to her legal recovery. Any mistake that existed at the time of plaintiff's execution of the fee agreement was a unilateral one, i.e., solely the mistaken belief of defendant. Clearly, defendant, as drafter of the fee agreement, had the ability to condition the terms of his fee arrangement; that he failed to do so is his fault. The fee agreement clearly states that the fee charged by defendant is to be "Twenty Five Percent of any amount recovered . . . before the institution of suit . . ."; defendant, as drafter of this agreement, should be strictly held to the express terms of the bargain he devised. Defendant's mistaken belief that he could pursue plaintiff's claim independently of the other parties is inadequate to relieve him from compliance with the terms of his agreement with plaintiff.

Defendant also argues that plaintiff's execution of the "distribution sheet" on February 3, 1979 constitutes a new contract or "integration" which supersedes the original fee agreement. Although the evidence indicated that neither plaintiff nor her parents objected when plaintiff signed the sheet and accepted defendant's check for $58,243, the evidence clearly showed that defendant did not explain why his fee was 33-1/3 percent and did not explain that he had not instituted suit. Plaintiff's father testified that after reading the sheet, he assumed that defendant had charged the 33-1/3 percent fee because defendant "went to Court." Plaintiff thought that the sheet reflected the amount that defendant "said he reached."

Although defendant argues that the "distribution sheet" constituted "the final and complete expression of the agreement between the parties," which rendered the original fee agreement inoperative,

defendant has failed to prove by clear, precise and convincing evidence that both plaintiff and defendant assented to the formation of an "integration" or a new contract, i.e., the "distribution sheet," in substitution of the fee agreement. The testimony evidenced both that defendant never told plaintiff why he charged 33-1/3 percent and never told plaintiff that he had not instituted suit. Since plaintiff was not aware of the above information, she could not have consented to enter into a new contract which gave defendant a 33-1/3 percent fee even though he had never instituted suit in her behalf. Thus, defendant failed to sustain his burden in that he failed to prove that both parties had the present intent to be legally bound by the terms of the "distribution sheet," i.e., "new agreement." Essner v. Shoemaker, 393 Pa. 422. 143 A.2d 364 (1958). The testimony established that plaintiff and her parents regarded the "distribution sheet" as a kind of "record" of plaintiff's receipt of the settlement funds from defendant; plaintiff and her father believed at the time of plaintiff's signing of the "distribution sheet" that it conformed with the terms of the original contingent fee agreement. Plaintiff and her parents were unsophisticated in legal matters and had never retained an attorney; it was reasonable for plaintiff to have believed that defendant, as her attorney and fiduciary, would adhere to the terms of the contingent fee agreement when the time came for him to collect his fee.

As defendant's proffered defenses are without legal merit, the court finds that defendant Mayer violated the express terms of the contingent fee agreement which he drafted. This agreement clearly provides that defendant's fee is 25 percent of any amount recovered "before the institution of suit." In plaintiff's case, a settlement was reached

without the necessity of instituting suit; defendant admitted that he had not brought suit on plaintiff's behalf. As the drafter of the agreement, defendant should be held strictly to its express terms, particularly since, as an attorney, he was legally capable of drafting an agreement that would have made provision for any future contingencies that might have proven unfavorable to him. Plaintiff had the right to expect that defendant would adhere to the "plain meaning" of his agreement, i.e., that he would charge a 25 percent fee if he settled plaintiff's case before having to institute suit. Plaintiff proved by a preponderance of the evidence that defendant violated the terms of their contract, i.e., contingent fee agreement, and plaintiff is entitled to recover the difference between the 33-1/3 percent fee charged and the proper fee of 25 percent, an amount of $7,247.

## ISSUE 2.: FACTUAL BACKGROUND

The second issue decided by this court involves defendant's charge of a ten percent contingent fee for the collection of no-fault medical benefits from plaintiff's father's automobile insurance carrier, Nationwide. Plaintiff and /or her father paid these ten percent fees upon defendant's request to do so; plaintiff denies that she ever agreed to defendant's charge and also contests the legality of these charges under the Pennsylvania No-fault Motor Vehicle Act. As stipulated at trial, the amount in controversy is $1,785.50.

Plaintiff's father testified repeatedly that he never agreed with defendant that defendant would charge ten percent for recovering medical benefits from plaintiff's father's no-fault carrier, Nationwide. Plaintiff's father testified that he only be-

came aware of defendant's ten percent charge after defendant requested payment by letters which were sent to plaintiff with the no-fault benefit checks. Plaintiff's father testified that he paid defendant ten percent each time defendant requested payment because "[h]e asked for the money, and I paid him. That is the way I pay my bills." Plaintiff also testified that she never made an agreement with defendant for him to be paid ten percent of plaintiff's recovery of no-fault medical benefits.

Defendant testified that plaintiff's father agreed to pay defendant a ten percent fee on "duplicate" medical payments received from Nationwide; defendant stated that plaintiff's father agreed to this fee before plaintiff signed the contingent fee agreement, either at one of the meetings at defendant's home or on the telephone. Defendant testified that the ten percent fee agreement had been reached with plaintiff's father before plaintiff executed the contingent fee agreement on September 20, 1977; defendant believed that this was so because the fee agreement clearly stated that any fee charged by defendant was to be charged against "any amount recovered . . . excluding any recovery made of the no-fault coverage of the Nationwide Insurance Company." Plaintiff's attorney presented defendant with a letter dated September 28, 1977, eight days *after* plaintiff signed the fee agreement, addressed to plaintiff's father, in which defendant stated that he had been "incorrect in connection with your no-fault coverage." In summary in this September 28, 1977 letter, defendant informed plaintiff's father that his automobile insurance company, Nationwide, had no limit on the amount of medical expenses that it would pay on plaintiff's behalf. Defendant also informed plaintiff's father that both Blue Cross/Blue Shield and

Nationwide would pay medical expenses; "In other words, you can end up getting these expenses twice." Defendant attempted to characterize this letter as simply a "reaffirmation" to plaintiff's father of defendant's earlier agreement with him to charge a ten percent contingent fee on all no-fault medical payments from Nationwide which represented duplicate payments, i.e., medical benefits paid by Nationwide after Blue Cross/Blue Shield had paid the vendors for plaintiff's medical expenses.

The court is of the opinion that this letter severely weakens defendant's position that he had reached an agreement with plaintiff's father by which he was to receive a ten percent fee on all "duplicate" medical payments from the no-fault carrier, Nationwide, *eight days or more before this letter was sent.* One reasonable interpretation of this letter is that it is announcing to plaintiff's father, for the *first time,* the concept of "double recovery" for plaintiff's medical expenses from Blue Cross/ Blue Shield and Nationwide. Further, defendant's testimony concerning the alleged agreement with plaintiff's father for the ten percent charge is not convincing. Although defendant could not remember what plaintiff's father had said regarding defendant's arrangement for the ten percent fee, defendant testified that plaintiff's father did something "in the form of a manifestation, the exact words, the nature of which I don't remember, which led me to believe as far as he was concerned it was okay." Defendant also testified that he did not tell plaintiff of any agreement with her father concerning a contingent fee on no-fault benefits because he "didn't think it was necessary."

Although defendant testified that the agreement for his ten percent fee on no-fault benefits had been

reached before plaintiff signed the contingent fee agreement, it is significant that while the fee agreement mentions an "exclusion" of no-fault benefits for the purpose of calculating defendant's fee, it does not discuss this ten percent charge on the "duplicate" medical bills paid by Nationwide. Defendant testified that he "didn't think it would be necessary to put that agreement concerning the double payments into the form of a written agreement," although defendant expressly provided for his charge on the liability portion of plaintiff's case.

## ISSUE 2.: DISCUSSION

After reviewing the evidence adduced at trial and evaluating the credibility of the witnesses, the court found that no agreement had been entered into by the parties for defendant's charge of ten percent on the "duplicate" medical expenses paid by the no-fault carrier, Nationwide. The evidence established that plaintiff's father and plaintiff paid ten percent of certain Nationwide medical expense payments when defendant advised them that a certain amount was due him. Defendant's letters to plaintiff requesting this payment do not expressly request a "10% fee." As Exhibits P-1, P-2, and P-3 demonstrate, defendant simply requested a figure that equalled a ten percent charge. P-1 is representative of these fee requests:

May 13, 1978
Dear Helga,
Here's a check of $161.00 for the Physical Therapy from 2-3-78 to 3-22-78.
My charge for this payment is $16.10.
Sincerely,
(signed) Harry R. Mayer

Although the court finds that the parties did not *mutually agree* that defendant was to receive a ten percent contingent fee on the medical payments from the no-fault carrier, if an agreement had been entered into by the parties, it would be unenforceable because of illegality.

The Pennsylvania No-fault Motor Vehicle Insurance Act contains the following provision regarding attorney fees at 40 Pa.C.S.A. §1009.107(1): Fees of claimant's attorney-

(1) If any overdue no-fault benefits are paid by the obligor after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the payment of no-fault benefits, *a reasonable attorney's fee (based on actual time expended)* shall be paid by the obligor to such attorney. *No part of the attorney's fee for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or deducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee.* (Emphasis added.)

This section of the act specifically prohibits an attorney from collecting a fee based upon a percent of no-fault medical benefits received by his client. Office of Disciplinary Counsel v. Lewis, 493 Pa. 519, 426 A. 2d 1138 (1981); Shrager, David S., Pennsylvania No-fault Motor Vehicle Insurance Act, p. 175 (1979). As the Pennsylvania Supreme Court has stated, "an attorney is forbidden by statute to apply any part of no-fault payments received by his client to a fee for making a claim for no-fault benefits. . . ." Lewis, supra, at p. 526.

The Pennsylvania No-fault Motor Vehicle Insurance Act also provides for criminal sanctions:

Any person who charges, demands, receives or collects for hospital or medical products, services or accomodations rendered in the treatment of an injured person or for rehabilitative occupational training or for legal services rendered in connection with a claim for basic loss benefits, any amount in excess of that authorized by this Act with awareness that the charge is in excess of that authorized is guilty of a misdemeanor and upon conviction may be fined not less than one hundred dollars ($100.) or more than five hundred dollars ($500.) or may be imprisoned for not more than six months or both. 40 Pa.C.S.A. §1009.602.

It is undisputed that defendant charged ten percent for the processing and collection of plaintiff's no-fault medical benefits from Nationwide. It is also undisputed that defendant only charged a ten percent fee "against" medical benefits that he characterized as duplicate or "windfall" payments, i.e., medical payments which corresponded to an earlier payment of plaintiff's medical expenses by Blue Cross/Blue Shield. Defendant did not charge a ten percent contingent fee on other no-fault benefits received by plaintiff from Nationwide, such as wage loss payments. Defendant argues in his legal memoranda that the ten percent fee does not violate the terms of the Pa. No-fault Insurance Act's provision of attorney's fees because it does "not interfere with the payment of the plaintiff's basic medical and rehabilitation costs because those costs had been paid by Blue Cross. . . ." (Brief in Support of Defendant's Exceptions, p. 6). Essentially, it is defendant's contention that his fee was not charged against a *net loss* sustained by plaintiff but against a *net gain*, as plaintiff's medical bills had already been paid by Blue Cross and, hence,

these no-fault payments covering plaintiff's previously paid medical expenses are "windfall" payments to plaintiff.

It is this court's decision to adhere to the plain meaning of the prohibition against contingent attorney fees charged against no-fault benefits contained in the Pa. No-fault Insurance Act. "An insurance statute which imposes a penalty on the payment of counsel fees must be strictly construed." Smith v. Harleysville Insurance Company, 275 Pa. Super. 246, 418 A. 2d 705 (1980). The legislative intent of protecting accident victims and insuring that their basic losses are compensated by insurance (40 Pa.C.S.A. §1009.102) is clearly effectuated by requiring that an attorney not charge a contingent fee against his client's receipt of no-fault benefits.

Although defendant characterizes plaintiff's receipt of no-fault medical expense benefits as "duplicate" or "windfall" payments, the court notes that these benefits were paid by Nationwide as the result of a lawful contract of insurance entered into between plaintiff's father and Nationwide Insurance Company. Clearly, as an insured, plaintiff's father had the contractual right to receive these payments on behalf of plaintiff, his daughter, from his insurer, Nationwide. The court is hesitant to characterize the receipt of insurance benefits, pursuant to a lawful contract of insurance, as "windfall" payments.

It is this court's opinion that as the evidence did not support defendant's claim that an agreement existed between plaintiff and defendant for defendant's receipt of a ten percent fee for processing plaintiff's no-fault claims against Nationwide and, further, that even if an agreement had been proved, it would be unenforceable by this court because it

contravenes the Pa. No-fault Insurance Act, plaintiff is entitled to a refund of these fees charged by defendant in the amount of $1,785.