## Essner, Appellant, *v.* Shoemaker.

Argued April 30, 1958. Before JONES, C. J., MUS-MANNO, ARNOLD, JONES and COHEN, JJ.

*Herbert M. Linsenberg,* with him *Leon Meltzer,* for appellant.

*Leonard B. Rosenthal,* with him *William Benner Farran, Thomas A. Galbally,* and *Abrahams & Lowenstein,* for appellees.

OPINION BY MR. JUSTICE COHEN, June 30, 1958:

This appeal is from the dismissal of plaintiff's complaint in equity praying for specific performance of an oral contract allegedly made with the defendants, Samuel, Charles L. and Daniel M. Tabas, assigning their interests in certain Philadelphia real estate to plaintiff.

In 1951 the defendants Ellwood P. Shoemaker and his wife entered into a written agreement to sell a 75 acre tract of land located in Philadelphia to the nominee of defendant Elizabeth Stevens, the straw-party for the defendant Tabases. The time of settlement under the agreement was extended by mutual consent until November 16, 1955.

Subsequently, the Tabases entered into an exclusive agency contract with Albert M. Greenfield & Company, a real estate brokerage firm, wherein they authorized Greenfield to execute a written agreement of sale for

the Philadelphia land for $350,000.[1] However, Greenfield failed to produce a prospective purchaser and on February 2, 1955, the Tabases terminated the exclusive agency arrangement and withdrew Greenfield's authority to contract for the sale of the property. They then relisted the tract for sale with Greenfield and other brokers on a non-exclusive basis.

In the summer of 1955 the plaintiff began negotiations with the Tabases for the assignment of their contract for the purchase of the Philadelphia property. These negotiations supposedly culminated on September 8, 1955 when two of the Tabases, their attorney, plaintiff's attorney and representatives of Greenfield met for the purpose of reaching final agreement on the terms of the proposed contract of asignment. Within a week thereafter a draft contract was prepared and initialed by a representative of Greenfield and sent to the plaintiff. Although the plaintiff executed and returned the contract, the agreement was never signed by the Tabases, and in the following month the property was conveyed to them by the Shoemakers under the original agreement of sale.

On October 21, 1955, the plaintiff instituted the present suit in equity alleging that the negotiations on September 8th, 1955 resulted in a binding oral agreement; that the initialed draft contract was a sufficient memorandum thereof to satisfy the requirements of the Statute of Frauds, and that therefore plaintiff was entitled to specific performance. At the conclusion of the evidence taken on the factual issues raised, the chancellor concluded *inter alia* that plaintiff had failed to establish the existence of an oral contract with the Tabases. Plaintiff's exceptions to the adjudication of the chancellor were refused and a decree dismissing her

---

[1] The offering price was subsequently reduced from $350,000 to $300,000.

complaint was entered from which this appeal was taken.

We are bound by the rule that on appeal the findings of fact of a chancellor, approved by the court *en banc,* have the effect of a verdict of a jury, and will not be disturbed if supported by competent evidence. After consideration of the present record we conclude that the chancellor did not err in finding that the defendants had not entered into a final and binding oral agreement at the September 8th meeting.

It is understandable when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a contract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain. *Upsal Street Realty Co. v. Rubin,* 326 Pa. 327, 192 Atl. 481 (1937). And, if the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to, before it is reduced to writing, no contract exists until the execution of the writing. *Onyx Oils & Resins, Inc. v. Moss,* 367 Pa. 416, 80 A. 2d 815 (1951); 1 Williston, Contracts §§28, 28A (3rd ed. Jaeger, 1957). But cf. *Taylor v. Stanley Company of America,* 305 Pa. 546, 552, 158 Atl. 157 (1932) (oral agreement enforceable where provision for reduction to writing made only for purposes of proof).

In the present case the chancellor believed that the Tabases had expressed the intention not to be bound until a draft of the agreement should have been executed and approved. The evidence supports his view of the matter. "Indeed, it was admitted by all parties to the September meeting that the oral provisions of the contract were to be discussed with the title company representative subsequent to the meeting, *and that the*

*drafts when committed to writing should be forwarded to respective counsel for approval. . ."* (Emphasis supplied).

The chancellor was justified in rejecting plaintiff's contention that the sole reason for this submission to counsel was to ascertain whether the draft conformed to the alleged oral understanding. "Such an interpretation might well be credible if that had been the initial meeting of the parties. However, the arrangement too closely approached the parties' prior dealings . . . [which included the drawing up of two draft agreements] to permit of such an interpretation. Certainly the two initial drafts were not committed to writing in the absence of some indication of assent by the parties, and yet neither was signed by both parties and indeed subsequently [both] were materially altered, as evidenced by the draft drawn from the September 8th discussion, apparently without complaint. . . [from] the parties.

"It is difficult to believe that the principals, experienced in real estate dealings as they were, would intend to . . . [assent unequivocally] to an oral agreement in a transaction involving more than a quarter of a million dollars, [and] complicated by assignments, mortgages and taxes . . . ."

Holding, as we do, that the chancellor did not err in finding that there was no oral contract, it is unnecessary for us to determine the other issues raised on this appeal.

Decree affirmed at appellant's cost.