Hatalowich *v.* Redevelopment Authority of Monessen, Appellant.

482

Submitted September 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

*James J. Manderino,* and *Manderino and Sparacino,* for appellant.

*Albert M. Nichols,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, November 26, 1973:

The Redevelopment Authority of the City of Monessen appeals from a decree in equity by the Court of Common Pleas of Westmoreland County.[1]

The decree ordered appellant Authority to pay to appellees Frank, William, and Amel Hatalowich, trading as Mon-Valley General Tire Company, $25,442.46 as damages for breach of a contract for the sale of land.[2]

---

[1] We have jurisdiction pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, §202(4), 17 P.S. §211.202(4) (Supp. 1973).

[2] Appellees originally prayed specific performance of the contract. However, during trial, the parties stipulated and filed with the court a waiver of the originally requested remedy. A motel has since been constructed on the site in question.

On April 10, 1965, appellees submitted to the Authority a document entitled "Proposal."[3] This writing, which the parties agree constituted an offer to purchase, outlined plans for the land in question, stated a price, and was accompanied by a check for ten percent of the proposed purchase price. Paragraph seven recites that upon acceptance of the proposal an "Agreement" would be executed and a ten percent deposit made "to complete the purchase . . . in the manner set forth in the Agreement."

Approximately six months later, on October 28, 1965, the Authority at a regular meeting adopted Resolution 165 which approved appellees' proposed use of the tract in question as a tire service and recapping establishment. The resolution continued: "The Redevelopment Authority of the City of Monessen hereby designates the Mon Valley General Tire Company as the sole Developer for said described tract of land and hereby directs the preparation of a final agreement for the disposition of said tract of land from the Redevelopment Authority of the City of Monessen to Mon Valley General Tire Company." No other formal document was ever executed. In reliance on Resolution 165, appellees continued preparations for construction through further architectural consultation and test borings at the site. Appellant retained the deposit for nearly three years, until September 6, 1968, when it tendered a refund and informed appellees that it would not convey.

That appellees' "Proposal" constituted an offer is not disputed. The question is whether Resolution 165 accepted the tendered offer. The Authority maintained at trial and argues in this appeal that no contract was consummated. The chancellor found Resolution 165

---

[3] Two alternate proposals were submitted. One was mutually abandoned.

to be an acceptance and concluded that the contract was complete. We find no error in the trial court's determination affirmed by the court en banc. We affirm.

Liminally, it must be emphasized that the scope of our review here is narrowly circumscribed. It is well settled that the chancellor's findings of fact approved by the court en banc have the effect of a jury verdict and will not be disturbed on appeal if supported by competent evidence. While we are always free, and indeed are duty bound, to modify erroneous applications of law, when, as in the instant case, determination of the parties' intent is crucial, the chancellor's factual conclusions if supported by competent evidence will not be overturned. *Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 305 A.2d 689 (1973), cert. denied, 414 U.S. 1158, 94 S. Ct. 916 (1974).[4]

Appellant urges two theories neither of which compels a finding of non assumpsit. Initially, it is argued that Resolution 165 could not be an acceptance because not couched in the offer's terms and not consistent with the acceptance procedure outlined in the offer. The Authority attempts to take advantage of two hornbook rules of interpretation. First, a reply to an offer which purports to accept, but adds qualifications or makes acceptance conditional, is not an acceptance, but rather a counter-offer. See Restatement of Contracts §60 (1932). Second, when an offer states a manner of acceptance, it becomes the exclusive mode of creating the contract. See id. §61.

Comparing appellees' offer to Resolution 165, like the chancellor and the court en banc, we preceive no qualifications or conditions in the resolution which would preclude the finding that it accepted appellees'

---

[4] Accord, *Cowen v. Krasas*, 438 Pa. 171, 264 A.2d 628 (1970); *Pittsburgh Outdoor Advertising Co. v. Virginia Manor Apartments, Inc.*, 436 Pa. 350, 260 A.2d 801 (1970); *Essner v. Shoemaker*, 393 Pa. 422, 143 A.2d 364 (1958).

offer. Nor do we find any material variance in the terms of agreement recited in each document. The Resolution as well as the offer refers to "Parcel 2"; both relate to a parcel of approximately 28,000 square feet; both describe appellees' projected tire recapping and service facility.[5]

Likewise, we do not find that the Authority's failure to accept in the manner provided by paragraph ten negates the existence of a contract. That paragraph states: "Acceptance, or rejection, of this proposal shall be made by depositing such acceptance, or rejection, notification in the United States mail addressed to the Proposer at the address set forth below." Although this provision sets out a manner of acceptance, there is no indication that mailing is the exclusive method of acceptance. The intent of this clause is clear; it purports to adopt the "dispatch rule" to insure that loss

---

[5] In *Hedden v. Lupinsky*, 405 Pa. 609, 176 A.2d 406 (1962), we recognized that "[t]o constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer." Id. at 612, 176 A.2d at 408. There, a general contractor received a telephone call in which the caller offered to perform ceramic tile installation in a particular building. When the general contractor mailed a written subcontract to the tile mechanic, the terms differed in several respects from the original understanding. Specifically, the mailed subcontract required a maintenance bond, control over employees on the building site, and arbitration of all claims arising from the agreement.

We affirmed the denial of the general contractor's claim for damages occasioned by the tile firm's refusal either to sign the subcontract or to perform the work. Our decision was based upon the lack of identity between the terms of the original oral offer and those of the written contract proposal.

In the present case there can be no doubt as to the parties, the parcel of land, or the price contemplated by the acceptance. There is here no problem of conditional acceptance or reference to subject matter not included in the offer. The terms and conditions of the resolution are functionally equivalent to those of the offer; the required identity is thus achieved.

in the mails will not render the Authority's acceptance ineffective.[6] Here the Authority's acceptance was accomplished by an official, public act—Resolution 165.

Next appellant argues that since the offer contemplated execution and delivery of the "Agreement," a final document, and none was executed or delivered, no contract existed. We find this assertion unpersuasive.

*Schermer v. Wilmart,* 282 Pa. 55, 127 A. 315 (1925), addressed the problem of failure to execute a contemplated formal document. There we held a deposit receipt sufficient evidence of a meeting of the minds to permit a decree of specific performance of a land sale contract. The rationale of *Schermer* has been applied and amplified. *Field v. Golden Triangle Broadcasting, Inc.,* supra; *Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968); *Moudy v. West Virginia Pulp & Paper Co.,* 385 Pa. 39, 121 A.2d 881 (1956); *Onyx Oils & Resins, Inc. v. Moss,* 367 Pa. 416, 80 A.2d 815 (1951); *Taylor v. Stanley Co.,* 305 Pa. 546, 158 A. 157 (1932). See *Melo-Sonics Corp. v. Cropp,* 342 F.2d 856 (3d Cir. 1965); *In re ABC-Federal Oil & Burner Co.,* 290 F.2d 886 (3d Cir. 1961).

Recently in *Goldman,* supra, we recognized that "[s]ection 26 of the Restatement of Contracts specifically recognizes that parties may bind themselves contractually although they intend, at some later date, to draft a more formal document: 'Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an

---

[6] Restatement of Contracts §61 (1932). Here the Authority's form proposal must be interpreted as merely stating a permissible method of acceptance. See Id. comment *a* at 67; 1 A. Corbin, Contracts §88 (1963); 1 S. Williston, Contracts §76 (3d ed. 1957).

intention to prepare and adopt a written memorial thereof . . . .' "[7]

Neither *Whitemarsh Township Authority v. Finelli Brothers, Inc.*, 408 Pa. 373, 184 A.2d 512 (1962), nor *Essner v. Shoemaker*, 393 Pa. 422, 143 A.2d 364 (1958), require a contrary result. No formal contract was executed in *Whitemarsh*. The dispute involved Finelli's bid for construction of a municipal project, which though accepted by the township, was unsigned. The township's "instructions to bidders" provided that "[n]o proposal will be considered . . . which is not properly made out and signed in writing by the bidder. . . ." 408 Pa. at 378, 184 A.2d at 515. Because of this express language, the bid was void ab initio. Thus no power of acceptance was created in the township. And since no contractual relationship could be founded upon a void bid, we held failure to execute a formal writing negated the existence of a contract.

An alleged oral land sale contract precipitated the *Essner* litigation. There, we simply affirmed the chancellor's findings that the parties did not intend to be bound until a written agreement had been executed. This Court held that an oral contract had not been created because " 'it was admitted by all parties to the September meeting that the oral provisions of the con-

---

[7] *Goldman v. McShain*, 432 Pa. 61, 69, 247 A.2d 455, 459 (1968) (quoting Restatement of Contracts §26 (1932)).

*Field v. Golden Triangle Broadcasting, Inc.*, 451 Pa. 410, 305 A. 2d 689 (1973), cert. denied, 414 U.S. 1158, 94 S. Ct. 916 (1974), held a "letter agreement" to sell two radio stations to be a contract despite repeated references in the letter to a future "formal contract." We there noted that "when the evidence is conflicting as to whether the parties intended that a particular writing would constitute a complete expression of their agreement it has been held that it is a question of fact for the trier of fact to determine whether a contract exists." Id. at 414, 305 A.2d at 691. See 1 A. Corbin, Contracts §30 (1963) ; cf. 1 S. Williston, Contracts, §28A (3d ed. 1957).

tract were to be discussed with the title company representative subsequent to the meeting, *and that the drafts when committed to writing should be forwarded to respective counsel for approval . . . .'"* 393 Pa. at 425-26, 143 A.2d at 366. See *Taylor v. Stanley Co.,* supra.

As *Schermer* and its progeny illustrate, when a later-written memorialization is contemplated, the crucial inquiry in ascertaining the existence of a contract is the intention of the parties. Here, the chancellor and the court en banc found that competent evidence established the requisite intent to contract, and that a contract had in fact been entered into by the parties. Our review of the record discloses no ground for disturbing this conclusion.

Decree affirmed. Each party to pay own costs.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.