426 A.2d 1152

**YELLOW RUN COAL COMPANY**

v.

**ALMA–ELLY–YV MINES, LTD. and Yellow Run Energy Company, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed March 6, 1981.

Petition for Allowance of Appeal Denied June 19, 1981.

John A. Metz, Jr., Pittsburgh, for appellants.

David E. Thomas, Philadelphia, for appellee.

Before SPAETH, WICKERSHAM and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from a judgment in an action on a written contract. The issue is whether the writing in question is an enforcible contract. The lower court left this issue to the jury, and when the jury found that the writing was an enforcible contract, refused to enter judgment n. o. v. We affirm.

On December 6, 1974, appellee Yellow Run Coal Company, a strip mining company, and appellants, Alma-Elly-Yv Mines Ltd. and Yellow Run Energy Company, signed a typewritten agreement under which Yellow Run agreed to mine coal from certain property in Adams Township, Cambria County, and appellants agreed to pay Yellow Run $14 per net ton of coal mined, with the provision that "should the cost of extracting the coal from the ground ... exceed the sum of $10.00 per ton then the gross figure paid ... will be increased so as to guarantee all costs of operation plus the sum of $4.00 per ton." The mining operations were to continue for a minimum period of two years. Over the next six months, Yellow Run mined 7,840.05 tons of coal, and appellants paid it $109,760.70 or $14 per net ton. On May 5, 1976, Yellow Run filed the complaint in assumpsit that commenced the present litigation, alleging that appellants owed it $217,627.40, which was the total of $186,267.20, representing the guaranteed costs of operation, plus $31,-360.20, representing $4.00 per ton of coal mined. On February 1, 1979, a jury returned a verdict for Yellow Run in the exact amount claimed. The lower court denied appellants' motion for judgment n. o. v. or a new trial. On appeal, appellants only argue for judgment n. o. v.

At the end of the typewritten agreement is the following handwritten statement:

The validity of this Agreement is conditional upon the incorporation of all changes listed on the initialled accompanying attached yellow sheet, copy of which is in Ben Weerts' [1] possession.

(R.R. 28)

The attached yellow sheet, also handwritten, has written across the top of it the phrase, "Modifications, changes, deletions etc.—to be made in proposal" Then there follow six numbered paragraphs, the first and last of which are:

1. List minimum equipment to be used on job during life of equipment.

1. Ben Weerts was the representative of both appellant corporations.

6. Add to 1–C that Operator will work in full compliance with applicable mining laws (some element of damages should be considered here, as the only real loss if permits are revoked is to owner).

Appellants argue to the lower court—and on appeal, argue to us—that the terms of these two paragraphs were never met; that therefore the modifications contemplated by the yellow sheet attached to the agreement were never made; and that therefore the condition upon which, by its own terms, the validity of the typewritten agreement depended was never satisfied.

The lower court rejected this argument. In its opinion, the agreement—the typewritten agreement plus the handwritten attachment—was ambiguous:

> [T]he writing only evidences the parties' intent in the sense that the parties definitely wanted the changes [on the attached yellow sheet] to become part of their formal [typewritten] agreement. It does not show whether Plaintiffs and Defendants desired that the agreement be valid and enforceable before they detailed the two open terms.

Slip op. at 6.

Accordingly, the court held that the

> question of whether the parties became *contractually bound* despite the existence of incomplete terms raised a *factual issue* for the jury. The jury had a right to weigh all the circumstances in the parties' negotiation and later performance in resolving this issue.

Slip op. at 6 (court's emphasis).

We agree with this reasoning.

■ When the evidence is in conflict as to whether the parties intended that a particular writing should constitute an enforcible contract, it is a question of fact whether a contract exists. *Field v. Golden Triangle Broad, Inc.*, 451 Pa. 410, 305 A.2d 689 (1973). *See also Associated Hardware Supply Co. v. Big Wheel Distributing Co.*, 355 F.2d 114 (3rd Cir. 1966); *Melo-Sonics Corporation v. Cropp*, 342 F.2d 856

(3rd Cir. 1965); *Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455 (1968); *National Products Co., Inc. v. Atlas Financial Corp.*, 238 Pa.Super. 152, 364 A.2d 730 (1975); *Buff v. Fetterolf*, 207 Pa.Super. 92, 215 A.2d 327 (1965); 3 CORBIN ON CONTRACTS §§ 554, 595 (1960). Here, the fact that two of the terms on the attached yellow sheet were never met created a conflict in the evidence. On the one hand, the failure of the parties to meet these terms supported appellants' argument that the parties had never come to an agreement. On the other hand, the parties' typewritten agreement was so complete as to suggest that they had come to an agreement, and this suggestion was powerfully supported by the parties' conduct: appellee mined 7,840.05 tons of coal, for which appellants paid $109,760.70, and it was only after six months had elapsed that appellants asserted that there was no binding agreement. As one authority has stated:

> The determination of the intention of the parties and the interpretation of their words may both be largely affected by their conduct in the course of a transaction. The fact that one of them, with the knowledge and approval of the other, has begun performance is nearly always evidence that they regard the contract as consummated and intend to be bound thereby . . . . The fair and just solution may then be the enforcement of promises rather than a decision that no contract exists.

1 Corbin on Contracts § 95 (1963) (footnote omitted).

Appellants' emphasis on the provision that "[t]he validity of this Agreement is conditional upon the incorporation of all changes" in the attached yellow sheet, not only depreciates the significance of their conduct, but also defines the concept of enforcibility too narrowly.

 To be enforcible, a contract must be complete. That is to say, it must represent a meeting of the parties' minds on the essential terms of their agreement. *Hahnemann Med. College & Hospital of Philadelphia*, 267 Pa.Super. 436, 406 A.2d 1120 (1979); *Bredt v. Bredt*, 231 Pa.Super. 65, 326 A.2d 446 (1974); *Beliron Constr. Co. v. Potomac Ins.*

*Co.*, 230 Pa.Super. 379, 326 A.2d 499 (1974). If the parties have agreed on the essential terms, the contract is enforcible even though it is an informal memorandum requiring future approval or negotiation of incidental terms. In re *ABC-Federal Oil & Burner Co.*, 290 F.2d 886 (3rd Cir. 1961); *Field v. Golden Triangle Broadcasting, Inc., supra.*

In *Field*, for example, our Supreme Court held enforcible a letter written by one who sought to purchase two radio stations. The letter was in the form of a preliminary memorandum stating the parties' agreement on price and terms for financing. It also stated that it was "[s]ubject to agreement on a formal contract," and it did not specify a date for settlement, or fix a deadline for the necessary approval of the Federal Communications Commission. The Court sustained the chancellor's findings that the letter was an enforcible contract:

> Appellant also urges that 'many other' material terms and conditions that are customarily included in a contract for sale of a going concern are absent from the August 14, 1968 letter agreement. However, the fact that additional provisions would enhance the position of both parties is not controlling. What is necessary is that the parties agree to all the essential terms and intend the letter to be binding upon them. We believe that the letter agreement in question manifests such agreement and intention.
> 451 Pa. at 419, 305 A.2d at 694.

Similarly, in *Bredt v. Bredt, supra*, we held enforcible a support agreement made in open court and not formalized or completed:

> The fact that the parties intended to formalize their agreement at some later date or omitted some material terms and conditions therefrom is not controlling as long as the parties agreed to all the essential terms and intended the contract to be binding upon them. [citations omitted]
> 231 Pa. Superior at 71, 326 A.2d at 449.

Here the jury was entitled to find that the parties had agreed to all the essential terms—the subject matter

(strip mining); the place and times for performance; and the price—and intended their agreement to be binding. When the trier of fact has determined the intention of the parties to an agreement, an appellate court will defer to the findings, so long as they are supported by the evidence. *Hatalowich v. Redevelopment Authority of Monesum*, 454 Pa. 481, 312 A.2d 22 (1974) (chancellor's findings).

Affirmed.