## Johnson v. Central Penn National Bank

*Peter Busbaum-Johnson,* for plaintiff.
*Michael Kraemer,* for defendant.

KELTON, *J.,* May 15, 1986—Before us is defendant's motion for summary judgment, which we grant in part and deny in part. Plaintiff was discharged from her employment at defendant Central Penn National Bank on June 8, 1984, and she brought this action for money damages against her former employer. In her complaint, plaintiff alleges that the termination of her employment was unlawful in that it violated public policy (count I), was a breach of a written contract (count II), violated defendant's duty to deal with her in good faith (count III), and was a breach of an oral contract of employ-

ment (count IV). Defendant has moved for summary judgment on all four counts of plaintiff's complaint. Plaintiff is contesting defendant's motion only as to count II. Therefore, by the order that follows, we grant defendant's motion for summary judgment as to counts I, III and IV of plaintiff's complaint. However, for the following reasons, we deny defendant's motion for summary judgment with respect to count II.

A motion for summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine question of material fact exists and that the moving party is entitled to judgment as a matter of law. However, judgment should be entered only in the clearest of cases and when no doubt exists as to the absence of a triable issue of fact. Pa.R.C.P. 1035(b) and Williams v. Pilgrim Life Insurance Company, 306 Pa. Super. 170, 452 A.2d 269 (1985).

The record shows that at the time of her discharge, plaintiff was the head teller at Central Penn's branch office at Bensalem Township, Bucks County. She had been employed by defendant for 13 years from the summer of 1971 until June 8, 1984. During May of 1984, plaintiff permitted a Central Penn customer to cash approximately ten personal and business checks that were drawn on other banks. These checks, amounting to approximately $50,000, were later returned by the drawee bank to Central Penn because of insufficient funds. By cashing the checks, plaintiff violated Central Penn's policy that a check drawn on another bank must be deposited, not cashed. (Central Penn "Check Cashing and I.D. Guide", p. 3). Also, all checks cashed were far above plaintiff's check cash-

ing limit of $500 and some were payable to a corporation with cash paid to an individual endorser.

John Steiner, plaintiff's superior and the branch's manager, was apprised of the returned checks and met with plaintiff on May 25, 1984. As a result of this meeting, he issued a bank form of disciplinary notice to plaintiff. It is plaintiff's position that because of the wording of Mr. Steiner's notice of "Action to be Taken" this disciplinary notice constituted a contract between her and the bank, i.e., that she would not be dismissed if there was no loss on the checks. The form stated that the following action was contemplated by the bank:

"None at this time as we are endeavoring to resolve the problem. However Della has been advised that a substantial loss in this case could result in dismissal."

Steiner's superiors had instructed him that a disciplinary notice be issued to plaintiff, but apparently did not instruct him on the precise nature of the discipline. At the time Mr. Steiner issued the form notice, he communicated his understanding to plaintiff that "she would not be dismissed" *unless* there was a loss to the bank. He also had further discussions with plaintiff as to his ability to recoup the losses for these checks. Eventually, the bank did recover all amounts owed on these checks from the bank customer and his family.

The bank argues that plaintiff could be discharged at any time and without cause.

It, of course, has been a settled rule in Pennsylvania that:

"[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the pow-

er of either party to terminate an employment relationship for any or no reason." Geary v. United States Steel Corp., 456 Pa. 171, 175, 319 A.2d 174, 176 (1974) (a 4-3 decision). See also however Banas v. Matthews International Corp., 348 Pa. Super. 464, 502 A.2d 637, 644 et. seq. (1985) (discussing exceptions to and criticisms of the Geary rule). The relationship described in the above quoted language from Geary is often referred to as employment at will. In our case, plaintiff clearly was an employee at will *prior* to the issuance of the disciplinary notice. However, on the present record, we believe that there may be a question of fact as to whether Mr. Steiner and plaintiff had agreed on the date that the disciplinary notice was issued that plaintiff would *only* be fired thereafter *if* a loss to the bank resulted from her improvident cashing of the checks. See Yellow Run Coal Co. v. Alma-Elly-Yu Mines, Ltd., 285 Pa. Super. 84, 426 A.2d 1152 (1981) (where evidence is in conflict as to whether the parties' intended that a particular writing should constitute an enforceable contract, it is a question of fact whether a contract exists).

Plaintiff relies heavily upon Njoku v. University of Pittsburgh, 131 PLJ 437 (C.P. Allegheny 1982, Finkelhor, J.) in which it was held that unilaterally established grievance procedures adopted by the employer might limit or restrict the right to discharge an at-will employee. The bank argues persuasively that Njoku is not good law because of Richardson v. Charles Cole Memorial Hospital, 320 Pa. Super. 106, 466 A.2d 1084 (1983) which was decided after Njoku. However, in Richardson, it was clear that the employee handbook terms were not bargained for with the employee. Here, it may be possibly arguable whether an amendment to the

at-will status was participated in by plaintiff.

We deny summary judgment for two reasons. We note: (1) that there is a wide variety of opinions expressed in this gradually evolving employment security field (see e.g. the majority opinion of Spaeth, P.J. and the concurring and dissenting statements and opinions of Rowley and Beck, J. J. in Banas v. Matthews International Corp., 348 Pa. Super. 464, 502 A.2d 637 (1985); and (2) that both Banas and Richardson were decided *after jury trial* and not at the summary judgment stage.

In our opinion, whether or not the form notice to plaintiff and the conversations she had with her superiors both before and after the check misadventure would amount to a contractual alteration of her at-will employment status should properly be determined at trial. We do not believe the bank's right to relief is clear at this stage. Ordinarily, we should avoid dicta in an opinion such as this. But because it may affect the parties' attempts to resolve this matter by settlement negotiations, we will state that we see nothing in the present record which would justify a claim for punitive damages.

## ORDER

And now, this May 15, 1986, it is hereby ordered that:

(1) Defendant's motion for summary judgment as to Count I, Count II, and Count IV of plaintiff's complaint is granted; and

(2) Defendant's motion for summary judgment as to Count II of plaintiff's complaint is denied.