## Bruce v. The Fountains at Logan Square v. Amtech Elevator Services and ABS Services Inc.[1]

C.P. of Philadelphia County, October Term, 2002, no. 3804.

---

1. Defendant ABM Industries Inc. was incorrectly identified as "ABS" and as ABM Inc. on different occasions.

*Kathleen Wilkinson,* for appellants (The Fountains).
*William Rubert* and *Richard Hohn,* for appellees (Amtech Services and ABM).

McINERNEY, *J.* September 15, 2006—Defendant/third-party plaintiff, The Fountains at Logan Square LLC, appeals[2] this court's entry of nonsuit in favor of third-party defendants/appellees, Amtech Elevator Services and its insurer, ABM Industries Inc.

The suit arose from an accident on January 15, 2001, in which Robert Scott Bruce was seriously injured, and his co-worker Thomas D. Stinson was killed, when the scaffolding in an elevator shaft gave way and they fell several stories to the ground. The men were remodeling an elevator at The Fountains, a retirement facility in Philadelphia, as part of a larger modernization project. It is undisputed they were acting within the course and scope of their employment with Amtech at the time of the accident. All claims resulting from this accident were settled except for the third-party plaintiff claim brought by The Fountains against Amtech for the failure of Amtech, a subcontractor on the project, to include The Fountains as an additional insured on its insurance policy for the project.

A jury began to hear evidence on The Fountains' claim against Amtech on March 12, 2006. The trial was divided into two phases—liability and damages. The liability phase concerned the issue of whether Amtech, as the subcontractor, had a contractual obligation to name The Fountains as an additional insured on its insurance pol-

---

2. After filing post-trial motions, but prior to the hearing, The Fountains filed a notice of appeal to the Superior Court (no. 99 EDA 2006), which was quashed as not ripe for adjudication.

icy. The Fountains' general contractor, Uniwest Construction, did not perform elevator work. Consequently, they put the elevator portion of the contract out to bid, retaining Zipf Associates Inc. to formulate the bid solicitation. The purpose of the bid was to hire a subcontractor to perform the elevator work. The bid specifications entitled, "Elevator Installation and Modernization Specifications for Logan Square East" (Zipf specifications), outlined the work to be done on the elevators for The Fountains' renovation project. However, in addition to the work, section 1.07(A) of the Zipf specifications stated, "The elevator contractor shall maintain a comprehensive general liability insurance policy throughout the term of the contract, including completed operations, blanket contractual and broad form property damage in a casualty or liability insurance company acceptable to the owner." Section 1.07(B) went on to state, "Insurance shall fully protect . . . the owner . . . and any other owner representatives identified by the owner, from all loss." It is the effect of this clause that is at issue in this case.

The Fountains maintained that as a result of submitting the winning bid, based on the language of section 1.07(B), Amtech was obligated to name it as an additional insured and was in breach of its contract by failing to do so. However, Uniwest, as the general contractor, upon awarding the bid to Amtech, forwarded a "Subcontractor/Purchase agreement" letter on March 3, 2000 (Trial exhibit D-1) to Amtech, which included specific instructions regarding insurance coverage requiring only that Uniwest be named as an additional insured:

"(d) We need your insurance agent to send us a certificate of insurance coverage listing Uniwest Construc-

tion Inc. as an additional insured. The enclosed 'accord' certificate, exhibit 'G,' shows our minimum insurance requirements for this project."

Nowhere in the agreement between Amtech and Uniwest is The Fountains specified or referenced. In fact the only reference to the Zipf specifications in the contract between Uniwest and Amtech was confined to exhibit "B," "scope of work" (Trial exhibit D-1), which states:

"(2-1) Furnish and install elevator work in accordance with 'elevator installation and modernization specifications for Logan Square East' as prepared by Zipf Associates and dated July 6, 1999."

It is this reference and Amtech's acceptance of the bid which The Fountains maintained contractually obligated Amtech to name them as an insured. However, a plain reading of the contract carries no such obligation and, as a matter of law, following the close of The Fountains' case, this court granted Amtech's motion for nonsuit.[3]

While the Zipf specifications were referenced with regard to "scope of work," it was undisputed their purpose was to establish the parameters for the elevator work to be done to enable Uniwest to solicit bids for the work and hire a subcontractor. The specifications were not intended nor did they constitute a contract between The Fountains and the eventual bid winner. And, in fact, The Fountains' own testimony revealed Amtech did submit one revision, an increase in cost, that was ultimately ac-

---

3. The Fountains make much of the fact that Amtech began work on the project prior to the signing of this agreement. We do not find that of much significance except as it reflects on Uniwest's somewhat lax attitude with reference to protecting anyone including themselves before beginning work.

cepted by Uniwest. The contract between Amtech and Uniwest is clear and unambiguous as to Amtech's obligations.

The awarding of the bid to Amtech by Uniwest did not create a contract between Amtech and The Fountains. Nor did the awarding of the bid to Amtech bind Amtech to provide insurance for The Fountains. Once the decision was made to award the bid to Amtech, Uniwest extended a contract to Amtech, which Amtech accepted. It is that contract which binds Amtech. Although as noted previously, that contract refers to the Zipf specifications in terms of the elevator work to be done, it by no means constitutes a wholesale incorporation of those specifications. The unambiguous language of the contract is clear that it is the elevator repair and maintenance work to be done that is incorporated, but nothing else. Uniwest contracted with Zipf because they do not do elevator work; however, as general contractor Uniwest was responsible for the entire project, and while they might not have known what needed to go in the elevator contract, they knew how to require insurance and they only required Amtech to name themselves.

The Fountains argues that Joseph DeMaio acting on behalf of Amtech, in submitting a bid in response to the Zipf specifications, was contracting to abide by all the terms of the Zipf specifications. The undisputed facts are clearly otherwise. Although it is true Amtech submitted a bid, and did file an exception in their bid with reference to a particular portion of the elevator work, it was a bid and not the final contract. The contract then followed, a contract which did not require Amtech to name The Fountains.

The terms of the "Subcontract/Purchase agreement" dated March 3, 2000, do not specify inclusion of the terms of an original bid. They in fact supersede the terms of the bid. According to *Corbin on Contracts §3.22*:

"An offer may be so made as to empower a single offeree to accept many times, or to empower many offerees to accept. In the former case, the resulting series of contracts between the two parties may be either unilateral or bilateral, and may be wholly independent of each other or may be related in some way to each other."

The bid and subcontract are not a "series" of contracts. Once the bid was awarded the subcontract was offered and accepted and superseded the bid, with only the "work to be performed" incorporated. Uniwest only required indemnification for itself and Amtech complied.

The Supreme Court recognized the principle of substitution of previous terms by subsequent ones in *Hatalowich v. Redevelopment Authority of Monessen,* 454 Pa. 481, 485 n.5, 312 A.2d 22, 24 n.5 (1973).

"We affirmed the denial of the general contractor's claim for damages occasioned by the tile firm's refusal either to sign the subcontract or to perform the work. Our decision was based upon the lack of identity between the terms of the original oral offer and those of the written contract proposal."

In the alternative, The Fountains argued that they were an intended third-party beneficiary of the contract between Uniwest and Amtech. As a matter of law, they were unable to establish that claim.

By not including a reference to insurance coverage for The Fountains in Uniwest's contract with Amtech, The Fountains cannot claim third-party beneficiary status:

"in order for a third-party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third-party be a beneficiary, and that intention must have affirmatively appeared in the contract itself. *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 57, 70 A.2d 828, 830-31 (1950)." *Scarpitti v. Weborg,* 530 Pa. 366, 370, 609 A.2d 147, 149 (1992).

The one exception, normally confined to beneficiaries of an estate, "allows a third-party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires, supra,* unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983)." *Scarpitti v. Weborg,* 530 Pa. 366, 372-73, 609 A.2d 147, 150 (1992).

If Uniwest and The Fountains intended Amtech to be a named insured they knew how to do that. Similarly, if Uniwest and Amtech intended The Fountains to be a third-party beneficiary, they knew how to express that. They did not.

Nor does The Fountains' reliance on the case of *Borough of Wilkinsburg v. Trumbull-Denton Joint Venture,* 390 Pa. Super. 580, 568 A.2d 1325 (1990), require a different result. *Wilkinsburg* stands for the proposition that only the contracting parties can expect to be covered as third-party beneficiaries:

"Trumbull was required to obtain public liability insurance naming Wilkinsburg as an additional insured to protect the borough and its agents from claims arising from operations under the contract."

Trumbull was found liable when it: "purchased a policy of comprehensive general liability insurance from CNA but failed to have Wilkinsburg named as an additional insured on this policy." *Id.* at 582, 568 A.2d at 1325.

It was therefore determined that The Fountains, by not being included in Uniwest's contract with Amtech, lacked standing to recover from Amtech. The Fountains' only recourse, if any, for the failure of Amtech to name The Fountains lies with its general contractor, Uniwest.

For all of the foregoing reasons, this court's entry of nonsuit should be affirmed.