J-A09003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NEIL R. ENGLEMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JANINE M. ENGLEMAN | |
| Appellant | No. 1163 MDA 2016 |

Appeal from the Order June 15, 2016
In the Court of Common Pleas of Columbia County
Civil Division at No(s): 1606 of 2010

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 21, 2017**

Janine M. Engleman ("Wife") appeals from the June 15, 2016, order entered in the Columbia County Court of Common Pleas, granting Neil R. Engleman's ("Husband") petition to distribute proceedings from sale of real estate.  On appeal, Wife raises the following three issues:  (1) the trial court erred and/or committed an abuse of discretion in failing to consider an order previously entered by a different judge, who considered and rejected Husband's claims regarding his sole payment of the mortgage, insurance, and taxes; (2) the proceeds from the sale of the property at issue should have been divided differently; and (3) the court erred and/or abused its discretion in finding certain facts regarding Husband when fashioning the June 15, 2016, order.  Based on the following, we affirm.

The facts and procedural history are as follows. The parties were previously married and divorced by decree on March 11, 2008. Prior to the divorce, the parties had entered into a Property Settlement Agreement ("PSA") on January 4, 2008. Their divorce decree incorporated the PSA.

Pertinent to this appeal, the parties jointly owned a parcel of real estate located at 35 Horse Farm Road, Bloomsburg, Pennsylvania ("Horse Farm"). The parties each owned one-half interest in the Horse Farm. The distribution of the Horse Farm was set forth in the PSA as follows:

9. EQUITABLE DISTRIBUTION

(a.) SALE OF REAL ESTATE

The real estate located at 35 Horse Farm Road, Bloomsburg, PA 17815 shall be listed for sale immediately at a price reasonably acceptable to both parties.

Upon the sale of the property, the net proceeds shall be divided equally 50% (fifty percent) to Husband and 50% fifty percent) to Wife. The net proceeds are defined as the gross sales price minus the first mortgage balance, second mortgage balance, lien(s), realtor's commission, and the reasonable and customary costs of sale only.

The parties agree that Husband's primary residence is 35 Horse Farm Road, Bloomsburg, PA 17815 and that Husband may continue to exclusively reside in the single family home therein until the sale of said property. The parties also agree that Wife's primary residence is also at 35 Horse Farm Road, Bloomsburg, PA 17815, and that she shall be entitled to exclusively reside in the living quarters of the Indoor Arena until the sale of the property. The parties further agree Wife shall continue to operate her business from 35 Horse Farm Road, Bloomsburg, PA 17815 until the sale of the property.

The parties shall pay and be equally responsible for one half of any net capital gains taxes attributable to the sale of the

- 2 -

property. The parties shall cooperate and provide each other with all the necessary documents in order to establish the effective tax basis for the property.

(b.) Real Estate Expenses-Horse Business

Wife currently operates a Horse related business on the real estate at 35 Horse Farm Road, Bloomsburg, PA 17815. Commencing on the execution of this Agreement, and without regard to when bills for such items are or were incurred, received or due, Wife shall be solely responsible for all past, present and future costs, liabilities or expenses associated with or attributable to her renting, occupying, maintaining, repairing, operating or leasing the Horse Business including, but not limited to building repairs, insurance, water and sewer rents, gas, electric, oil, telephone service, cable, lawn care, snow removal, fence repair and any liability to occupants or third parties for personal injuries or any other damages of any kind. Wife agrees to pay all of the expenses, costs and fees associated with the Horse Business, Horse Arena property, including but not limited to the insurance, utilities, day-to-day maintenance expenses. Wife shall keep Husband and his successors, assigns, heirs, executors, and administrators indemnified and held harmless from any liability, cost or expenses, including attorneys' fees, which are incurred in connection with such business, ownership, occupancy, maintenance, repair, costs, and expenses of the Horse Business.

(c.) Capital Gains, School and Real Estate Taxes

The parties shall pay and be equally responsible for one-half of any net capital gains taxes attributable to the sale of the property. The parties shall cooperate and provide each other with all the necessary documents in order to establish the effective tax basis for the property. The parties shall pay and be equally responsible for one–half of any Real Estate and School taxes attributable to the property beginning with the 2008 tax year.

Property Settlement Agreement, 1/4/2008, at 8-10.

On September 2, 2010, Husband filed a complaint requesting the court partition the Horse Farm, and averring (1) that he should be given credit and paid additional monies from Wife because she had occupied and used the

property and deprived him of such; (2) that he should be given credits for mortgage payments and additional expenses; (3) that he should be given monies from Wife for services rendered and improvements to the land; and (4) that he is entitled to costs, compensation for appraisers and any master's fees, experts' fees, and additional reasonable counsel fees. Wife filed an answer to Husband's complaint on November 18, 2010, denying the claims because Husband resided in the marital residence and the payment obligations were set forth in the PSA.

On July 18, 2012, the parties entered the following stipulation regarding the sale of the Horse Farm: (1) the current listing price shall be revised to $1,200,000.00; (2) the listing shall be reduced by $50,000.00 every three months to a minimum listing price of $950,000.00; (3) the parties shall accept any offer at the then current listing price and shall sign such agreements to close upon the transaction; and (4) in the meantime, all mortgage payments due after the stipulation date shall be paid one-half by each party and in a timely manner. Stipulation, 7/18/2012, at 1-2.

The matter proceeded for a number of years, including multiple petitions, filed by Husband, and corresponding hearings. For purposes of this appeal, we highlight two of those orders. First, on December 6, 2012, the court entered an order, requiring: (1) Wife pay Husband $4,471.77 on or before January 4, 2013, to compensate him for one-half of the amounts he paid towards the parties' mortgage and taxes. The court also stated that if

Wife does not pay Husband on or before January 4th, the property shall be listed with an auctioneer to be heard on or before May 31, 2013, and they shall cooperate in the marketing of the property with said auctioneer. Order of Court, 12/6/2012, at 1-2.[1]

Second, on June 24, 2014, the court entered an order, addressing Husband's motion to compel Wife to sign a listing agreement and pay insurance. The court mandated the Horse Farm be sold at auction and that Husband, on behalf of both parties, was authorized to sign an agreement of sale with the highest bidder. Order, 6/24/2014, at ¶¶ 1-2.[2]

On December 12, 2014, Husband filed a petition to enforce the PSA and court order incorporating the same. Husband noted the property went to auction but the reserve, which he set, was not met at that time. Furthermore, Husband alleged the following:

> 7. [Husband] was told by a number of bidders, and by the auctioneer who had been appointed by the Court, Dustin Snyder, that the property did not reach the reserve for three (3) main reasons: a) the fence surrounding the property was in deplorable condition; b) the property was not mowed and did not look marketable because of the condition of the un-mowed fields and grounds; c) [Wife] had stripped the property of numerous items including fifty (50) to sixty (60) gates in the riding arena and a sink and custom doors and windows.
>
> 8. [Wife] indicated that she had removed those items and had taken them to another horse farm.

---

[1] The order was not timestamped until December 18, 2012.

[2] The order was not timestamped until July 11, 2014.

9.   [Wife] also laughed when she talked to [Husband] at the auction stating that her plan of not making repairs and allowing the grass and other vegetation to grow foiled [Husband]'s plans for selling the property.

Plaintiff's Petition to Enforce Marriage Settlement Agreement and Court Order Incorporating the Same, 12/12/2014, at 2.  Husband also filed a petition for contempt on February 17, 2015, asserting Wife did not pay the mortgage on the property for the months of November 2014 through February 2015, and she had not paid the real estate taxes on the property for 2014, nor had she paid insurance on a barn and apartment that were on the property.  Plaintiff's Petition for Contempt, 2/17/2015, at 2.  Additionally, Husband averred Wife vacated the premises but did not winterize it and as a result, there was damage to the property.  *Id.*

A hearing was held regarding both petitions on February 26, 2015.[3] That same day, the court entered an order,[4] which found, in pertinent part:

2.  It is specifically found that [Wife] has acted in bad faith and intentionally undermined the auction sale which [w]as attempted on September 27, 2014.  Further, it is specifically found that [Wife], without authorization, dissipated the value of the marital asset which is the real estate located at 35 Horse Farm Lane, Bloomsburg, Pa., 17815 by removing windows, replacing doors, removing horse arena panels, abandoning the premises of which she was in possession as winter approached, leading to toilets breaking after freezing and probable destruction of the automated horse watering system on the premises.

_____

[3]  Wife failed to appear at the hearing and was not permitted to participate by telephonic testimony.

[4]  The order was not timestamped until March 13, 2015.

[Wife] has also failed in her duty to pay half of the mortgage payments, half of the taxes and to maintain the premises, including the fencing, on the property, which has fallen into extreme disrepair.

…

Further, the Order of December 6, 2012 directed the parties to cooperate in marketing the property with an auctioneer and [Wife]'s actions in this regard were directly in violation of that Order also. As such, [Wife] is found to be in contempt of Court.

3. As a result of the history in this case and [Wife]'s repeated contempt of Court (including the contempt finding under the Order of December 6, 2012), and [Wife]'s intentional frustration of this Court's attempts to facilitate sale of the premises, [Husband] is hereby granted sole prerogative and discretion to effect a sale of the premises located at 35 Horse Farm Road, Bloomsburg[,] Pa., 17815, pursuant to such terms and conditions and price as he determines in his discretion, subject to Court approval. [Husband] shall be authorized, on behalf of … both parties, to execute an agreement of sale, which shall be conditioned upon Court approval…. The Agreement of Sale and any Order approving the Agreement of Sale shall permit deduction from sale proceeds as follows:

…

F. Reimbursement to [Husband] for [Wife]'s expenses which are paid by him as follows:

1. Reimbursement to [Husband] for his payment of one-half of the mortgage obligations for November 2014, December 2014, January 2015 and February 2015 totaling $2,902.68.

2. $2,781.13 to reimburse [Husband] for [Wife]'s half of the 2014 school taxes paid by [Husband].

3. $310.00 which [Husband] paid to Brent Schell for winterizing the premises and repairing some of the plumbing which was damaged due to [Wife]'s abandonment of the premises without notice and without winterizing the premises.

Said amounts shall be paid to [Husband] out of the gross sale proceeds on the sale of the premises, however, a reconciliation shall be conducted at a later date to determine how much of the net sale proceeds shall be distributed to each party accounting for these payments being made out of the gross sale proceeds to [Husband]. It is noted that these items directed to be paid out of the gross sale proceeds are being deducted half from what might otherwise be paid to [Wife] and that a reconciliation shall be necessary at a later date.

G. All net sale proceeds from closing upon the sale of the farm premises shall be deposited into [Husband]'s Attorney's escrow account. Thereafter, no withdrawal shall be effected until further Order of Court upon a Petition for Determination of such by either party.

4. Immediate possession of the entire premises at 35 Horse Farm Road is hereby granted to [Husband] as a remedy for the contempt committed by [Wife], and in a further effort to try to preserve the value of the premises. [Wife] is hereby prohibited from being present upon the premises. If [Wife] seeks any personal [property] which she claims … belongs to her, [Wife] must contact [Husband]'s Attorney or file an appropriate motion.

Order of Court, 2/26/2015, at ¶¶ 2-4.[5]

Subsequently, Husband filed a motion for sanctions on April 15, 2015, a motion for court approval of sale of real estate on June 17, 2015, and a motion to force the sale of the parties' real estate and to sanction Wife on October 15, 2015. On November 5, 2015, the court ordered Wife to execute

_____

[5] Following the order, the presiding judge, the Honorable Gary E. Norton, recused himself from the matter on June 8, 2015. The matter was then assigned to the Honorable Brendan J. Vanston and then eventually to the Honorable David E. Grine.

the proposed deed or execute a recordable power of attorney authorizing another person to do so on her behalf. Order of Court, 11/5/2015.[6] The Horse Farm was subsequently sold to a third party on November 25, 2015.[7]

On January 4, 2016, Husband then filed a petition to distribute proceedings from sale of real estate pursuant to the court's February 26, 2015, order. Wife filed a responsive brief on April 14, 2016. The court heard argument on May 23, 2016. Thereafter, on June 15, 2016, the court granted Husband's petition, and made the following findings of fact:

> 1) Since the parties separated in 2008, [Husband] has paid a total of $448,156.56 in mortgage payments, insurance, and taxes on the parties' previously owned real estate at 35 Horse Farm Road, Bloomsburg, Columbia County, Pennsylvania ("Horse Farm").
>
> $332,110.46 (Mortgage Payments # 0100929467)
> $32,655.15 (Mortgage Payments #5000457908)
> $63,901.62 (Mortgage Payments #0100929870)
> $5,200.00 (Insurance to Thrush)
> + $14,289.33 (Taxes)
> $448,156.56
>
> 2) [Wife] is financially accountable for half of the $448,156.56 paid by [Husband].
>
> 3) The total amount [Husband] paid on [Wife]'s behalf is $224,078.28.
>
> 4) [Wife] has been paid $15,211.63 for federal taxes.
>
> 5) [Wife] has been paid $4,171.78 for prior attorney's fees.

---

[6] The order was not timestamped until November 10, 2015.

[7] Husband retained two acres of property from the buyers.

6) On November 25, 2015, the Horse Farm was sold for $800,000.00.

7) A tax credit of $4,758.82 was added to the sale price, bringing the total to $804,758.82.

8) The next total to be distributed to the parties was $490,878.83.

$804,752.82
- $18,089.00 (Settlement Charges)
- $287,676.99 (Mortgage Payoff)
- $8,000.00 (Transfer Taxes)
- $ 89.00 (Recording Costs)
- $25.00 (Escrow Fee)
$490,878.83 /2 = $245,439.41

9) [Husband] entered into an agreement with the buyers of the Horse Farm which enabled [Husband] to retain ownership of two (2) acres of the real estate.

10) [Husband]'s two (2) acres of the Horse Farm are worth $20,000.00.

Trial Court Opinion, 6/15/2016, at 1-3. The court then ordered the following:

(2) [Wife] shall receive $9,378.33 from the proceeds of the sale of the Horse Farm.

(3) [Husband] shall receive $481,500.50 from the proceeds of the sale of the Horse Farm.

(4) Any outstanding petitions or motions in the matter, which were not addressed in this Order are hereby dismissed with prejudice.

*Id.* at 5. Wife filed this appeal.[8]

_____

[8] On July 29, 2016, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife filed a concise statement on August 15, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 8, 2016, relying on its reasoning that it provided in the June 15, 2016 opinion and order.

Initially, we note Wife points to nine issues in her "Statement of Questions Involved." *See* Wife's Brief at 4-8. However, in her argument section, she only develops three of those claims. *Id.* at 13-23. Because she has abandoned the remaining six issues, we will not address them further. *See In re Jacobs*, 936 A.2d 1156, 1167 (Pa. Super. 2007) (issue is waived purposes of appellate review when a party does not develop it in brief).

Our standard of review regarding property settlement agreements is well settled:

> We have noted that "a property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally." *See VanKirk v. VanKirk*, 336 Pa.Super. 502, 505, 485 A.2d 1194, 1196 (1984) (quoting *Kleintop v. Kleintop*, 291 Pa.Super. 491, 495-96, 436 A.2d 223, 225 (1981)); *Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514 (1981); *see generally Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988) (*en banc*) (comparing and contrasting enforcement of property settlement agreements under contract law and Divorce Code). It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. *See Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 539, 526 A.2d 1192, 1194 (1987) (citing *Burns Mfg. Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976)); *see also Litwack v. Litwack, supra* 289 Pa.Super. at 407, 433 A.2d at 515 (in construing separation agreement court must adopt construction that gives effect to parties' intent in view of surrounding circumstances and purpose of contract). When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. *See Yellow Run Coal v. Alma-Elly-Yv Mines*, 285 Pa.Super. 84, 90, 426 A.2d 1152, 1155 (1981)(citing *Hatalowich v. Redevelopment Auth. of Monesum*, 454 Pa. 481, 312 A.2d 22 (1974)).

*Lyons v. Lyons*, 585 A.2d 42, 45 (Pa. Super. 1991).[9]

In her first argument, Wife complains the trial court erred and/or committed an abuse of discretion in failing to consider the February 26, 2015, order, which was previously entered by a different judge and rejected Husband's claims regarding his sole payment of the mortgage, insurance, and taxes. Wife's Brief at 13. Specifically, she states that at the February 26,

_____

[9] Furthermore, we are guided by the following:

> **§ 3105.  Effect of agreement between the parties.**
>
> **(a) *Enforcement.* —** A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a).

> **§ 3323.  Decree of court.**
>
> …
>
> **(f) *Equity power and jurisdiction of the court.* —** In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f).

2015, hearing, both Husband and the presiding judge discussed the fact that Wife had paid one-half the mortgage up until November 2015. *Id.* at 13-14. Wife notes that as a result of their discussion, the judge's corresponding order reflected that Wife was liable to Husband for reimbursement of certain expenses as reflected in Paragraph (3)(F) of the February 26, 2015, order: (1) one-half of the mortgage payments for November 2014 to February 2015, totaling $2,902.68; (2) one-half of the 2014 school taxes, totaling $2,781.13; and (3) $310.00 to winterize the premises and repairing some of the plumbing. *Id.* at 14-15. Citing the coordinate jurisdiction rule, Wife argues the present judge "completely ignored [the prior judge's] findings" in making his June 8, 2016, determination by concluding that Wife was financially accountable to Husband for $224,078.28. *Id.* at 15-18.

"Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003) (citations omitted).[10]

_____

[10] Further,

> [t]he reason for this respect for an equal tribunal's decision, as explained by our court, is that the coordinate jurisdiction rule is "based on a policy of fostering the finality of pre-trial applications

Here, a review of the two orders at issue reveals that the underlying petitions do not request the same relief from the trial court. Judge Norton's February 26, 2015, order addressed Husband's petition to enforce the PSA and court order incorporating the same, and his petition for contempt;[11] whereas, Senior Judge Grine's June 15, 2016, order disposed of Husband's petition to distribute proceeds from the sale of real estate.[12]

The judges were handling matters at separate procedural postures of the case and therefore, Senior Judge Grine did not "alter resolution of a legal question previously decided" by Judge Norton. *Id.* Accordingly, the

in an effort to maintain judicial economy and efficiency." Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

*Zane*, 836 A.2d at 29 (citations omitted).

[11] In his February 17, 2015, petition for contempt, Husband specifically raised the issue that Wife did not pay the mortgage on the property for the months from November 2014 to February 2015, and she had not paid the real estate taxes on the property for 2014, nor had she paid insurance on a barn and apartment that were on the property.

[12] In his January 4, 2016, petition to distribute proceeds from sale of real estate, he alleged he was "making claims for additional mortgage payments he paid as well as interest, taxes[,] other expenses he paid and attorney s ['] fees which he has incurred as a result of [Wife]'s actions in this action." Plaintiff's Petition to Distribute Proceeds from Sale of Real Estate, 1/4/2016, at ¶ 7.

coordinate jurisdiction rule does not apply to this case. Furthermore, as noted in the February 26, 2015, order, Judge Norton provided:

> A reconciliation shall be conducted at a later date to determine how much of the net sale proceeds shall be distributed to each party accounting for these payments being made out of the gross sale proceeds to Husband. It is noted that these items directed to be paid out of the gross sale proceeds are being deducted half from what might otherwise be paid to Husband and half from what might otherwise be paid to Wife and that a reconciliation shall be necessary at a later date.

Order, 2/26/2015, at (F)(3).[13] Indeed, Judge Norton recognized that a further determination might be necessary to ascertain whether Wife had to reimburse certain expenses for the entirety of the time period between the parties' separation and the sale of the Horse Farm. Accordingly, Judge Norton's February 26, 2015, order left the door open to amendments regarding the financial accountability of the parties and Wife's first issue fails.

---

[13] Additionally, the court noted the following:

> [Wife] has also failed in her duty to pay half of the mortgage payments, half of the taxes and to maintain the premises, including the fencing, on the property, which has fallen into extreme disrepair. These duties arose by virtue of the following orders: The order of the Cameron County Court of Common Pleas dated March 11, 2008, divorcing the parties and incorporating by reference the Marriage Settlement Agreement between the parties dated January 4, 2008, which imposed the duties of maintenance, mowing, payment of one-half of the taxes and one-half of the mortgage upon [Wife].

Order of Court, 2/26/2015, at ¶ 2 (emphasis added).

In Wife's second argument, she claims the proceeds of the Horse Farm should have been divided according to her own calculations. *See* Wife's Brief at 18-21. Wife applies the amounts set forth in the February 26, 2015, order, in which she only had to reimburse Husband for four months of mortgage payments, her share of the 2014 school taxes, monies owed for winterizing and repairs, her share of federal taxes, and her share of attorneys' fees paid, totaling $39,890.60. *Id.* at 19. She also claims she is owed $10,000.00, which was her share of the value of two acres of the property that were retained by Husband. *Id*. Consequently, Wife alleges she was actually entitled to $219,605.79 from the sale of the property. *Id.* at 21.

Here, the court found the following:

> Since the parties separated, [Husband] has been burdened with the full cost of mortgage payments, insurance, and taxes on the Horse Farm. [Husband] has paid $448,156.56 for said costs, despite [Wife]'s obligations to pay half of said costs, which totals $224,078.28. The PSA clearly delineates mortgage costs and liens as deductions to be taken from the sale proceeds of the Horse Farm before disbursement of any funds to the parties. Equity demands [Husband] be compensated for the $224,078.28 he paid to cover [Wife]'s half of the mortgage payments, insurance, and taxes on the Horse Farm. However, equity also demands [Wife] be compensated with half of the value of the two (2) acres of the Horse Farm that [Husband] retained through an agreement with the buyers of the Horse Farm. Due to the preceding findings of fact, the Court determines the following is an equitable distribution of [Wife]'s proceeds from the sale of the Horse Farm:



$245,439.41
- $224,078.28
- $15,211.63
- $4,171.78
+ $10,000.00

$9,378.33

> The Court finds [Husband] is entitled to receive the remaining proceeds from the sale of the Horse Farm, which total $481,500.50.

Trial Court Opinion, 6/15/2016, at 4-5.

We agree with the court's conclusion. Since Wife's argument largely relies on the assumption that the only monies due to Husband are those listed in the February 26, 2015, order, and because we previously determined that was not true, her issue is without merit.[14] In the June 15, 2016, order, the court correctly assessed the distribution of proceeds from the sale of the Horse Farm and Wife's second claim fails to show otherwise. Therefore, her second argument fails.

> Lastly, Wife argues:

> The Honorable Trial Court erred and/or an abuse of discretion in failing to consider the facts that Husband had the sole and all-encompassing ability to make his own "deal" for the sale of the parties' real property given the Orders of the prior Trial Court granting him such powers, and that in doing so, he not only chose to keep a choice two (2) acres of property for himself, he also chose to agree to hold a mortgage for the Buyers in the amount of $350,000.00 when fashioning said Trial Court's instant Order.

Wife's Brief at 21. Moreover, she states, "As Husband alone made these choices, Husband alone should bear the burden of the same and Wife should therefore first receive all monies due and owing her from the sale of the real

---

[14] As note **supra** in footnote 11, it merits mention that Husband's request for relief in his February 2015 petition for contempt was only for a specific time period.

- 17 -

property, with Husband to then receive payments from the Buyers on the mortgage he chose to hold." *Id.* at 22.

Wife's argument ignores the fact that the reason why the trial court provided Husband with the sole bargaining power regarding the sale of the Horse Farm is because it specifically found that Wife acted in bad faith and intentionally undermined the auction sale that was attempted on September 27, 2014. *See* Order of Court, 2/26/2015, at ¶ 2. Additionally, the court also determined Wife "dissipated the value of the marital asset" with her contemptuous actions and that she also failed to adhere to her responsibilities under the PSA. *Id.* As such, Wife's argument fails to persuade us that the trial court abused its discretion when it gave Husband such power regarding the sale of the property or that she should have priority in receiving monies owed to her regarding the sale. Accordingly, her final argument also fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017