J-A33020-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| MARY FRANCES F. SILBERMAN AND ROBERT M. SILBERMAN, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VITO LOGUIDICE, M.D., CHRISTOPHER R. FERRANTE, M.D., ORTHOPEDIC ASSOCIATES OF THE GREATER LEHIGH VALLEY AND NUVASIVE, INC. | : | |
| | : | |
| APPEAL OF: ORTHOPEDIC ASSOCIATES OF THE GREATER LEHIGH VALLEY, P.A. AND AGGRIEVED PARTIES, ATTORNEY DANIEL J. FERHAT AND WHITE AND WILLIAMS, LLP | : | No. 921 EDA 2014 |

Appeal from the Judgment Entered March 19, 2014,
in the Court of Common Pleas of Northampton County,
Civil Division, at No(s): C-48-CV-2009-9456

BEFORE:   LAZARUS, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 13, 2015**

Daniel J. Ferhat, Esquire (Attorney Ferhat) and White and Williams, LLP (collectively, Appellants) appeal from the judgment entered March 19, 2014. Specifically, Appellants challenge the trial court order imposing sanctions upon Attorney Ferhat in the amount of $34,646.40. We affirm.

The certified record reveals the following facts. Appellants represented defendant Vito Loguidice, M.D., in the underlying medical malpractice action filed by Mary Frances F. and Robert Silberman (collectively, Plaintiffs), in which Plaintiffs alleged that Dr. Loguidice caused injury to Mrs. Silberman during the course of orthopedic surgery. The matter was scheduled for a

---

*Retired Senior Judge assigned to the Superior Court.

jury trial on November 18, 2013. On the day of trial, prior to jury selection, the trial court met with the parties to discuss the possibility of settlement. At Attorney Ferhat's suggestion, the parties agreed to submit the matter to binding arbitration with a high-low agreement. After lengthy negotiations, the terms of the agreement to arbitrate were set forth on the record.

Following the conference, Attorney Ferhat raised the issue of exclusion of delay damages. While the parties did not agree that delay damages were excludable, after some additional discussions, the parties placed an agreement on the record that, if delay damages were awarded, that amount, when added to the arbitrator's initial award, could not exceed the agreed upon high limit.

On November 18, 2013, upon learning that the agreed upon arbitrator, JAMS, was available that week, counsel for Plaintiffs filed the necessary paperwork and payments to schedule arbitration. The following day, Attorney Ferhat forwarded to Plaintiffs' counsel a document he had drafted which purported to be a written arbitration agreement. That document contained a number of additional terms to which the parties had not agreed on the record.[1] Accordingly, Plaintiffs, at the advice of counsel, refused to sign the document on the basis that they would not renegotiate the

---

[1] This included a provision to exclude delay damages and a provision that Plaintiffs would look only to Dr. Loguidice's insurer for payment of any award.

agreement set forth on the record on November 18, 2013. In response, Attorney Ferhat refused to sign the JAMS arbitration agreement or submit defendants' fee, claiming that there had not been a meeting of the minds and, thus, no agreement to arbitrate.

Attorney Ferhat reiterated this position during a telephone conference with Plaintiffs' counsel and the trial court on November 20, 2013. During that conference, in addition to minor logistical and housekeeping matters, Attorney Ferhat insisted that he had not agreed that delay damages could be recovered in arbitration, and claimed that arbitration could not proceed unless delay damages were excluded. Later that day, Attorney Ferhat informed Plaintiffs' counsel and JAMS that he was cancelling the arbitration.

On December 11, 2013, counsel for Plaintiffs filed a motion seeking counsel fees, costs and sanctions against Appellants. On that date, following the filing of Plaintiffs' motion, Attorney Ferhat informed Plaintiffs' counsel stating that he "would like to proceed with arbitration, with delay damages as a possible element of recovery." Trial Court Opinion, 1/22/2014, at 11.

On January 22, 2014, following a hearing on Plaintiffs' motion, the trial court determined that Attorney Ferhat's conduct in delaying, and ultimately refusing, arbitration was obdurate, vexatious, and dilatory, and entered an

order directing Attorney Ferhat to pay sanctions in the amount of $34,646.40 to Plaintiffs' counsel.[2]

On March 19, 2014, counsel for Plaintiffs filed a praecipe to settle, discontinue, and end the underlying medical malpractice case.

Following the entry of judgment in the underlying matter, Attorney Ferhat timely filed a notice of appeal. He presents the following questions for our review.

> 1. Did the trial court commit an error of law in awarding sanctions against Attorney Ferhat for refusing to participate in a private arbitration where: (a) his opposing counsel would not agree to sign a general release, which the trial court erroneously determined was only a "housekeeping" matter, as a condition of the arbitration agreement; (b) the trial court recognized and stated that the issue of confidentiality had not been addressed or agreed upon by the parties; and (c) the trial court erroneously concluded that delay damages were awardable as a matter of right in private arbitrations?
>
> 2. Did the trial court commit an error of law in awarding sanctions against Attorney Ferhat for refusing to participate in a private arbitration without a written arbitration agreement when: (a) the trial court's finding of dilatory, obdurate, and vexatious behavior was unsupported in fact or law; (b) Defendants agreed to arbitrate the case before the time period to complete the arbitration expired; and (c) the agreed-upon arbitrator — JAMS — would not even agree to arbitrate the case without either an executed arbitration agreement between the parties, which [plaintiffs'] counsel would not sign, or a court order appointing JAMS as an arbitrator, which the trial court did not issue?

Appellants' Brief at 3 (trial court answers omitted).

---

[2] Attorney Ferhat filed a timely motion for reconsideration, which was denied by the trial court on April 7, 2014.

Following our review of the certified record, the briefs for the parties, and the relevant law, we conclude that the opinions of the Honorable Paula A. Roscoli thoroughly address and correctly dispose of Appellants' issues and supporting arguments.  Accordingly, we adopt the trial court's opinions of January 22, 2014 and June 4, 2014 as our own, and affirm the court's disposition of Appellants' issues on the basis of those opinions.  The parties shall attach copies of the trial court's January 22, 2014 and June 4, 2014 opinions to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/13/2015

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

MARY FRANCES SILBERMAN and
ROBERT M. SILBERMAN,

    Plaintiffs,

    v.

VITO LOGUIDICE, M.D. and
ORTHOPAEDIC ASSOCIATES OF
THE GREATER LEHIGH VALLEY,

    Defendants.

C-48-CV-2009-9456

## OPINION OF THE COURT

This matter is before the Court on Plaintiffs' Motion to Assess Counsel Fees, Costs, and Sanctions, which motion was filed as a result of defense counsel's failure to proceed to binding arbitration in this matter as agreed by the parties on November 18, 2013. Following a hearing and argument on the motion, we hereby make the following[1]:

I.    Findings of Fact

1.    This case is a medical malpractice case in which Plaintiff Mary Frances Silberman claims that Defendant Dr. Vito Loguidice caused injury to her during the course of orthopaedic surgery.

---

[1] Due to oversight, no one formally moved any of the exhibits into evidence at the conclusion of the hearing. This was brought to the attention of the Court by correspondence from Attorney Miller of January 2, 2014, in which he asked that the Court accept the exhibits into evidence. Attorney Ferhat was contacted seeking his position and chose not to respond. "The admission or exclusion of additional evidence after the evidence is closed is a matter within the discretion of the trial court[.]" *Silver v. Miller*, 201 A.2d 308, 309 (Pa. Super. 1964). Given that all exhibits by both parties were presented to the Court during the hearing without objection, we have chosen to admit the exhibits as requested.

2.   All parties, as well as counsel for all parties, were prepared to proceed to a jury trial in this matter on November 18, 2013.

3.   Likewise, a panel of jurors was available to hear the case, and the Court was prepared to conduct the trial commencing said date.

4.   Prior to beginning *voir dire*, the Court held a conference with counsel in order to determine if there was any possibility for settlement.

5.   At that time, Daniel J. Ferhat, Esq., counsel for Defendants, stated that there was no possibility of settlement, but that he wished to explore the possibility of submitting the matter to binding arbitration with a high-low agreement[2].

6.   Attorney Ferhat had previously made this suggestion in a phone call to Plaintiffs' counsel on November 13, 2013.

7.   Plaintiffs were initially opposed to arbitration, but after discussion with counsel on November 18, 2013, they decided that they would agree to proceed in said manner, with an agreed-upon high-low.

8.   Counsel spent a number of hours, with the assistance of the Court, determining agreeable high and low dollar figures to apply to the arbitration, as well as who the arbitrator would be.

9.   The high and low dollar figures were ultimately agreed upon by all parties and all counsel, as were the names of two potential arbitrators, Phil Hof, Esq. and Jerry Roscoe, Esq.

---

[2] As the high and low dollar amounts of the agreement are confidential, the Court makes no reference herein to the specific amounts.

Page 2 of 11

10. The only additional terms discussed during the conference were the timing of the arbitration and the method of presentation of expert witnesses.

11. Following the conference, counsel and the Court set forth on the record the terms of the agreement.

12. The terms of the agreement were: that the parties would proceed to binding arbitration with the high-low agreement; that either Phil Hof, Esq. or Jerry Roscoe, Esq. would conduct the arbitration; that whichever of the two suggested arbitrators was available first would conduct the arbitration; that the arbitration would take place that week if either arbitrator was available to do so, given that all parties had cleared their schedules for the week and given that Plaintiffs had travelled from Georgia to attend the trial; that *in the event that the arbitration could not be conducted that week, that it would take place within sixty (60) days*; and that no experts would be brought in to testify live for either party, but rather their reports would be submitted into evidence for consideration by the arbitrator. (N.T. 11/18/13, pp.2-5).

13. After this agreement was set forth on the record, Attorney Ferhat attempted to insert additional terms into the agreement, to which Plaintiffs and their counsel were not agreeable. (N.T. 11/18/13, pp.5-10).

14. One such additional term raised by Attorney Ferhat was the exclusion of any possible recovery of delay damages. (N.T. 11/18/13, p.8).

15. Plaintiffs and their counsel did not agree to such a term, and a thorough discussion took place on the record among counsel and the Court regarding same. (N.T. 11/18/13, pp.8-10).

No. 0155   P. 4/13                                    Jan. 22. 2014  2:31PM

441a

16. At the conclusion of that discussion, It was clear that the parties did not agree that delay damages were an excludable measure of damages. It was agreed, however, that any delay damages that may be awarded could not, when added to the arbitrator's initial award, exceed the high agreed to by the parties. (N.T. 11/18/13, p.10).

17. The proceedings were concluded and the jury panel dismissed, with the Court and all parties being of the understanding that the matter would be arbitrated as agreed. (N.T. 11/18/13, p.10).

18. Following same, the Court contacted the agreed-upon arbitrators and determined that Jerry Roscoe, Esq. was available to hear the case that week, on November 21, 2013 and/or November 22, 2013. The parties and counsel thereafter left the courthouse with the understanding that the arbitration would take place on one or both of those dates.

19. Had Attorney Ferhat not agreed that the arbitrator could award delay damages, if appropriate, in an amount such that the total award would not exceed the agreed-upon high, Plaintiffs would have pursued a jury trial on November 18, 2013.

20. On November 18, 2013, Attorney Todd Miller, counsel for Plaintiffs, executed the necessary paperwork provided by JAMS, the entity by which the Mr. Roscoe is employed, and sent same, along with Plaintiffs' share of the initial non-refundable fee deposit, in the amount of four hundred dollars ($400.00), via FedEx Priority Overnight, at a cost of twenty dollars and fifty cents ($20.50).

No. 0155 P. 5/13

Jan. 22 2014 2:31PM

442a

21. On November 19, 2013, Attorney Ferhat forwarded to Attorney Miller and Attorney Steven Bergstein, counsel for Plaintiffs, a document he had drafted purporting to be a written arbitration agreement.

22. Contained in that document were several terms which had neither been discussed nor agreed upon by the parties, including a provision excluding delay damages and a provision that Plaintiffs would look only to Defendants' insurer for payment of any award.

23. Attorneys Miller and Bergstein indicated that they would not agree, nor would they advise their clients to agree, to sign the document provided by Attorney Ferhat, on the grounds that an agreement to arbitrate had already been reached in the courtroom, and that they would not now renegotiate that agreement.

24. Because Plaintiffs' counsel declined to sign the document, Attorney Ferhat refused to sign the JAMS agreement or remit Defendants' share of the fee deposit.

25. Attorney Ferhat took the position, despite a clear record to the contrary, that there had not been a meeting of the minds on November 18, 2013 and that there was no agreement to arbitrate.

26. Attorney Miller, by correspondence of November 19, 2013, requested that Attorney Ferhat execute the JAMS agreement and submit the fee deposit so that the arbitration could proceed as planned.

443a

27. On November 20, 2013, the Court held a telephone conference with Attorneys Miller and Ferhat in order to assist the parties in moving forward with the arbitration.

28. During that conference, Attorney Ferhat insisted that a number of material terms had not been discussed in coming to the arbitration agreement that had been placed on the record, that there was accordingly no agreement, and that he could not proceed to arbitration.

29. The issues raised by Attorney Ferhat in that telephone conference included a number of logistical and housekeeping issues that were not material terms, such as the location of the arbitration, a general release, and lists of witnesses. All such issues were discussed and easily agreed upon between Attorneys Miller and Ferhat during the telephone conference.

30. In addition to these minor issues, Attorney Ferhat again raised the issue of delay damages, and insisted that he had never agreed, nor had he intended to agree, that delay damages could be recovered in the arbitration, despite a clear record to the contrary. Attorney Ferhat insisted that the arbitration could not proceed if delay damages were not taken off the table.

31. Later on November 20, 2013, Attorney Ferhat informed Attorney Bergstein and JAMS that he was cancelling the arbitration.

32. Plaintiffs spent five hundred forty seven dollars and sixty cents ($547.60) for airfare to attend the November trial.

33. Plaintiffs spent one thousand two hundred twenty four dollars and thirty cents ($1,224.30) for lodging to attend the November trial.

Page 6 of 11

34. Plaintiffs spent two hundred nine dollars and fifty cents ($209.50) for a rental car and gas to attend the November trial.

35. Attorney Miller spent three hundred sixty dollars ($360.00) on subpoenas for witnesses to testify at the November trial.

36. Attorney Miller spent seven hundred dollars ($700.00) on video services for the presentation of evidence at the November trail.

37. As a result of Attorney Ferhat's decision to agree to arbitration in lieu of a trial and then to cancel the arbitration in breach of the parties' agreement, Plaintiffs will be required to expend additional sums of money to return to the Lehigh Valley for disposition of this case.

38. Similarly, Attorney Miller will have to pay the above sums a second time in order to dispose of this case.[3]

39. Attorney Miller spent 160 hours from November 2, 2013 through November 17, 2013 preparing for trial.

40. Attorney Bergstein spent 69.3 hours from October 31, 2013 through November 17, 2013 preparing for trial.

41. Attorney Miller spent 21.5 hours from November 19, 2013 through January 2, 2014 on work brought about by Attorney Ferhat's refusal to proceed with the arbitration.

---

[3] Attorney Miller also testified at the hearing on the present motion that he paid a non-refundable fee of ten thousand dollars ($10,000) to secure the presence of a key expert witness at trial, which he would have to pay a second time for a future trial. However, given the parties' agreement to submit only expert reports to the arbitrator, as well as the Court's finding, below, that this case should proceed to arbitration, we find that no expense for this witness was occasioned by Attorney Ferhat's conduct, and accordingly we conclude that no portion of the witness fee is a recoverable element of damages.

42.   Attorney Bergstein spent 68.8 hours from November 19, 2013 through January 2, 2014 on work brought about by Attorney Ferhat's refusal to proceed with the arbitration.

43.   Attorneys Miller and Bergstein anticipate spending at least half of their original trial preparation hours, noted above, in order to come back up to speed to dispose of this case.

44.   Both Attorney Miller and Attorney Bergstein have an hourly rate of three hundred fifty dollars ($350.00).

45.   The within petition was filed on December 5, 2013.

46.   On December 11, 2013, following the filing of the Motion to Assess Counsel Fees, Costs, and Sanctions; and for the first time since the agreement was reached, Attorney Ferhat corresponded with counsel, stating that he would like to proceed with the arbitration, with delay damages as a possible element of recovery.

47.   There is no evidence to suggest that Attorney Ferhat's conduct after November 18, 2013 was sanctioned by Defendants Vito Loguidice, M.D. or Orthopaedic Associates of the Greater Lehigh Valley, or that either Defendant was aware of the position or actions of Attorney Ferhat in attempting to renegotiate the arbitration agreement.[4]

---

[4] During the course of the hearing on the present motion, Plaintiffs' counsel indicated that they were contemplating filing a motion for default judgment as a sanction for Attorney Ferhat's conduct. As the Court indicated at that time, we believe that such a sanction would improperly penalize the Defendants, who have not conducted themselves inappropriately with respect to the arbitration. Rather, the proper course is to sanction Attorney Ferhat, as set forth below.

48. Neither Vito Loguidice, M.D. or Orthopaedic Associates of the Greater Lehigh Valley appeared at the hearing on this motion.

49. Attorney Ferhat offered no testimony at the hearing on this motion, and therefore the testimony of Attorneys Miller and Bergstein was uncontroverted.

## II. Conclusions of Law.

1. "Technical words are not required to make a binding reference [to arbitration], and the form of submission is not important, if it clearly appears that the intent was to submit differences to arbitration, and to abide by the award." *Somerset Borough v. Ott*, 56 A. 1079 (Pa. 1904).

2. All material terms of the parties' arbitration agreement were set forth on the record on November 18, 2013.

3. The agreement set forth on the record at that time constituted a binding and enforceable agreement to arbitrate the issues in this case, in accordance with the terms noted in ¶12 above.

4. Attorney Ferhat's claim that there was no meeting of the minds and hence no agreement to arbitrate on November 18th was wholly without merit.

5. Attorney Ferhat partially breached the agreement by unilaterally cancelling the arbitration that was scheduled for November 21, 2013 and/or November 22, 2013.

6. Attorney Ferhat's failure to proceed with arbitration during the week of November 18th, despite a clear agreement by all parties to do so, unnecessarily delayed the proceedings in this case, created additional legal

Page 9 of 11

work, and created additional expense to the Plaintiffs and their counsel, all of which amounted to dilatory and obdurate conduct on the part of Attorney Ferhat.

7.   An award of counsel fees is proper as a sanction when there is a specific finding of dilatory, obdurate, or vexatious conduct by a participant to litigation. *Yeager v. Kavic*, 765 A.2d 812, 815 (Pa. Super. 2000); 42 Pa.C.S. § 2503(7).

8.   The number of hours spent by Attorneys Miller and Bergstein on work occasioned by the actions of Attorney Ferhat was reasonable. Furthermore, their hourly rate is reasonable, given their experience of more than thirty years.

9.   "An award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent." *Am. Mut. Liab. Ins. Co. v. Zion & Klein, P.A.*, 489 A.2d 259, 262 (Pa. Super. 1985)

10.   Plaintiffs and their counsel are entitled to an award of thirty four thousand six hundred forty six dollars and forty cents ($34,646.40) as a sanction against Attorney Ferhat. This sum is comprised of the Plaintiffs' airfare, hotel, rental car, and fuel expenses; counsel's subpoena fees, video service fees, JAMS fee, and FedEx fee; and Attorneys Miller and Bergstein's time from November 19, 2013 through January 2, 2014.

11.   An award of counsel fees for preparation of future proceedings would be improperly speculative.

12.    Payment of the above sum will best place Plaintiffs and their counsel in the same financial position that they would have been in if Attorney Ferhat had proceeded with the arbitration on November 21, 2013 and/or November 22, 2013 as the parties had agreed.

13.    When "parties agree to arbitration in a clear and unmistakable manner, then every reasonable effort will be made to favor such agreements." *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926 (Pa. 1964).

14.    There continues to exist a binding agreement to arbitrate the dispute between these parties, i.e. the contingent agreement to arbitrate the matter within sixty (60) days of November 18, 2013.

15.    It is reasonable and appropriate for this case to proceed to arbitration at this time, as contemplated and agreed by the parties, the terms of such agreement being those that were set forth on the record on November 18, 2013 and November 20, 2013.

WHEREFORE, we enter the following:

449a

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

MARY FRANCES SILBERMAN and     :
ROBERT M. SILBERMAN,             :     C-48-CV-2009-9456

         Plaintiffs,            :

         v.                :

VITO LOGUIDICE, M.D. and      :
ORTHOPAEDIC ASSOCIATES OF   :
THE GREATER LEHIGH VALLEY,   :

         Defendants.         :

## ORDER OF COURT

AND NOW, this 22nd day of January 2014, upon consideration of Plaintiffs' Motion to Assess Counsel Fees, Costs, and Sanctions, and following a hearing, it is hereby ORDERED that counsel for Defendants, Daniel J. Ferhat, Esq., shall pay to Plaintiffs' counsel the sum of thirty four thousand six hundred forty six dollars and forty cents ($34,646.40) as a sanction for his obdurate and dilatory conduct, as set forth in the foregoing Opinion. Said sum shall be paid within sixty (60) days of the date of this Order. Failure to make timely payment of same may result in the imposition of further sanctions.

It is further ORDERED that this matter shall proceed to binding arbitration within thirty (30) days of the date of this Order, or the earliest date thereafter upon which Jerry Roscoe, Esq. is available to arbitrate.

BY THE COURT:

_Paula A. Roscioli_
PAULA A. ROSCIOLI, J.

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

MARY FRANCES SILBERMAN and
ROBERT M. SILBERMAN,                          :          C-48-CV-2009-9456

                                              :

        Plaintiffs,                           :

                                              :

        v.                                    :

                                              :

VITO LOGUIDICE, M.D. and                      :

ORTHOPEDIC ASSOCIATES OF                      :

THE GREATER LEHIGH VALLEY,                    :

                                              :

        Defendants.                           :

## STATEMENT PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

**AND NOW,** this 4th day of June 2014, we hereby issue the following statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a):

The relevant factual and procedural history of this case is succinctly set forth in our opinion of January 22, 2014, the concomitant Order from which the instant appeal arises. Accordingly, we rely on that history in our discussion below.

On or about March 21, 2014, Defendant Orthopedic Associates of the Greater Lehigh Valley, P.A. and aggrieved parties Attorney Daniel J. Ferhat and White and Williams LLP (Appellants) filed a Notice of Appeal to the Superior Court of Pennsylvania from our Order of Court dated January 22, 2014, wherein we imposed sanctions upon Attorney Ferhat for his dilatory and obdurate conduct in connection with an agreement to refer this matter to binding arbitration pursuant to 42 Pa.C.S. § 7362. Said appeal was timely insofar as judgment was not entered in this case until March 19, 2014. _See, e.g. Miller v. Jackson_, 445 A.2d 160 (Pa. Super. 1982).

Appellants also filed appropriate security in accordance with Pa.R.A.P. 1731(a) on March 21, 2014.[1] The undersigned thereafter filed an order on April 7, 2014, pursuant to Pa.R.A.P. 1925(b), directing Appellants to file and serve upon the Court a concise statement of the errors complained of on appeal. Appellants timely filed such a statement, on April 28, 2014. In said statement, Appellants identify ten assignments of error with respect to our Order of January 22, 2014. We address these below:

**A.     This Court did not err in imposing sanctions upon Attorney Ferhat for his dilatory and obdurate conduct in refusing to proceed to the scheduled arbitration on the basis of the parties' failure to have discussed certain terms prior to referring the matter for arbitration.**

In the first six assignments of error raised in their statement, Appellants contend that this Court erred in imposing sanctions against Attorney Ferhat because a variety of terms were absent from the parties' agreement on November 18, 2013 to refer the matter to arbitration. More specifically, Appellants contend that sanctions should not have been awarded against Attorney Ferhat because "opposing counsel would not agree to sign a general release as a condition of the arbitration agreement," because "opposing counsel would not agree to the satisfaction of liens as a condition of the arbitration agreement," and because "confidentiality had not been addressed or agreed upon by the parties." (Statement, ¶¶1, 3, 4). Appellants further contend in general that we erred in imposing sanctions where there was not an "agreement as to all material terms of

---

[1] Appellants also filed a motion for reconsideration of our January 22, 2014 Order on March 21, 2014 which was properly before us pursuant to Pa.R.A.P. 1701(b)(3). That motion was denied on April 7, 2014.

the contract." (Statement, ¶6). These claims of error are factually incorrect, and their premise legally insignificant.

As discussed in our January 22, 2014 opinion, the parties entered into an oral agreement on the record on November 18, 2013 to refer this matter to binding arbitration, with a high/low agreement. (N.T. 11/18/13, pp.2-5). All parties agreed to the essential terms of the agreement to arbitrate, which included the fact that they were agreeing to arbitrate; the high/low dollar figures; the names of the two potential arbitrators, the one with the earliest availability being that who would be selected; and that the arbitration was to take place that week if either arbitrator was available, with a 60 day contingent time limit set. (N.T. 11/18/13, pp.2-5.) This agreement was reached after a number of hours of negotiation between counsel and in conference with the Court; no other terms were discussed prior to placing the agreement on the record. (N.T. 1/10/14, p.37). Following the Court's recitation of this agreement on the record and both counsel's and the parties' acknowledgement of their agreement with same, Attorney Ferhat stated, "[Y]ou've correctly summarized what the material agreement is." (N.T. 11/18/13, p.7). Thereafter, Attorney Ferhat attempted to negotiate additional terms to which Plaintiffs and their counsel were not agreeable. (N.T. 11/18/13, pp.5-10). When this attempt was rebuffed, the proceedings concluded with Attorney Ferhat's agreement to proceed with the arbitration as discussed, and his statement that there was nothing further that he wished to address with respect to the agreement. (N.T. 11/18/13, p.10).

585a

Yet, in spite of this clear agreement to arbitrate in accordance with the terms set forth on the record on November 18, 2013, and clear statement that the material terms thereof were set forth on the record, Attorney Ferhat later attempted to renegotiate the parties' agreement, under the guise of a claim that the parties had not reached an agreement because numerous issues had not been addressed, as well as a claim that he had not agreed to delay damages being a recoverable element of damages.

In an effort to salvage the arbitration agreement and assist the parties and counsel, the Court held a telephone conference on the record on November 20, 2013. During that conference, Attorney Ferhat claimed that numerous "material" elements had been omitted from the parties' November 18, 2013 agreement, resulting in the parties' failure to have a meeting of the minds that would constitute an enforceable agreement. He even went so far as to say, "Never did I intend to make any type of an agreement," a statement that was clearly belied by the record. (N.T. 11/20/13, p.8). This statement was further belied by Ferhat's own conduct in contacting Mr. Roscoe during the afternoon of November 18, 2013, inquiring as to how he would like to handle motions *in limine* with respect to the arbitration that was to take place that week. (N.T. 1/10/14, p.41.; Pl.'s Ex. 6, 1/10/14).

During the November 20, 2013 conversation, a number of issues were discussed, including the signing by Plaintiffs of a general release, an agreement for the satisfaction of liens, and an agreement for confidentiality. Attorney Todd Miller, counsel for Plaintiffs, easily agreed upon all of these points on behalf of his clients during this conference. (N.T. 11/20/2013, pp.8, 10, 16-17). Accordingly, we find

Page 4 of 12

Appellant's claims in their statement that "opposing counsel would not agree" to be specious. Appellants' contention that Plaintiffs' counsel would not agree to these terms is even directly contradicted within their own statement of errors, in which they state that delay damages "was the only remaining issue that had not been agreed upon." (Statement, ¶8). Moreover, the Court concluded that the attempt by Appellants to suggest that there were outstanding issues was a ruse to justify their failure to proceed with the arbitration, and an attempt to re-negotiate the previously agreed-upon issue of delay damages.

Moreover, the failure of the parties to include these issues in their discussions or agreement on November 18, 2013 did not render the agreement unenforceable. "If the parties have agreed on the essential terms, the contract is enforceable even [if] it is an informal memorandum requiring future approval or negotiation of incidental terms." *Yellow Run Coal Co. v. Alma-Elly-Yv Mines, Ltd.*, 426 A.2d 1152, 1155 (Pa. Super. 1981). "[T]he fact that additional provisions would enhance the position of both parties is not controlling. What is necessary is that the parties agree to all the essential terms and intend the [agreement] to be binding upon them." *Field v. Golden Triangle Broad, Inc.*, 305 A.2d 689, 694 (Pa. 1973). What is required to form an enforceable agreement is that "the parties agreed to all the essential terms and intended the contract to be binding upon them." *Bredt v. Bredt*, 326 A.2d 446, 449 (Pa. Super. 1974). Such was the circumstance in this case on November 18, 2013, in spite of Attorney Ferhat's claim to the contrary.

Page 5 of 12

587a

Black's Law Dictionary defines an "essential term" as a "contractual provision that must be included for a contract to exist." *Black's Law Dictionary* 1509 (8th ed. 2004). The essential terms of the agreement at issue were those set forth on the record on November 18, 2013, and do not include the issues raised here by Attorney Ferhat. He has cited no authority to support his premise that the inclusion of a general release is necessary in order to form a binding agreement to refer a matter for arbitration pursuant to 42 Pa.C.S. § 7362, or that its exclusion from such an agreement would render the agreement unenforceable. (Statement, ¶2). Likewise, our own research has uncovered no such authority. Attorney Ferhat's subjective feeling with respect to the importance of the additional terms he wished to include in the parties' agreement, and his regret of his oversight in neglecting to discuss them in conference on November 18, 2013 notwithstanding, the absence of those additional terms from the November 18, 2013 agreement did not render it a nullity. Furthermore, the absence of a written arbitration agreement did not entitle Attorney Ferhat to cancel the arbitration. As there was an enforceable agreement to proceed to arbitration on November 21 and/or 22, 2013, Attorney Ferhat's cancellation of that scheduled arbitration amounted to obdurate and vexatious conduct, which warranted the sanctions we imposed. His conduct in the days following November 18, 2013, up to and including his cancellation of the arbitration, cannot in any way be considered "good faith efforts consistent with the law to negotiate all material terms to an arbitration contract and to reduce that agreement to a written document" when the parties had clearly entered into a binding oral

Page 6 of 12

agreement and his conduct in attempting to renegotiate that agreement ultimately ended with his breach thereof. (Statement, ¶5).

**B.     This Court did not err in concluding that Attorney Ferhat had engaged in dilatory and obdurate conduct resulting a breach of the parties' agreement, thus making the imposition of sanctions appropriate.**

In their seventh and eight assignments of error, Appellants contend that this Court erred in imposing sanctions against Attorney Ferhat because, at the time the sanctions were imposed, the 60 day time period that the parties had agreed to as a contingent time frame in which to conduct the arbitration had not yet expired, and "in an ongoing effort to resolve the dispute amicably, [Attorney Ferhat] agreed to arbitrate the case with the possibility of delay damages, which was the only remaining issue that had not been agreed upon." (Statement ,¶8).

It appears that Appellants misapprehend the nature of the sanctions imposed. We are mindful that the 60 day contingent time period had not yet expired, and in fact required the parties to proceed to arbitration under the terms of their November 18, 2013 and November 20, 2013 agreements within thirty days of our entry of the appealed-from Order on this basis. The sanctions we imposed against Attorney Ferhat were not damages for breach of contract. Rather, they were, as their name suggests, a penalty for his dilatory and obdurate conduct in unnecessarily delaying the proceedings, creating additional legal work, and creating additional expense to Plaintiffs and their counsel. The fact that Attorney Ferhat may have extended an olive branch to Plaintiffs' counsel in an attempt to resolve the matter – only after the motion for sanctions was filed – does not obviate the fact

that he engaged in sanctionable behavior in the days following November 18, 2013. Accordingly, we believe these assignments of error to also be without merit.

**C.    This Court did not err in imposing sanctions where Attorney Ferhat's conduct was the sole reason why JAMS would not agree to arbitrate the case.**

In their ninth assignment of error, Appellants assert that this "Court erred in awarding sanctions against Attorney Ferhat for refusing to participate in a private arbitration without a written arbitration agreement where the agreed-upon arbitrator, JAMS, would not agree to arbitrate the case without either an executed arbitration agreement, which the Plaintiff's attorneys would not sign, or a court order appointing JAMS as an arbitrator, which the Court did not issue." (Statement, ¶9). This assignment of error amounts to nothing more than an attempt to lay blame elsewhere, when Attorney Ferhat's conduct was the reason why the arbitration did not go forward as scheduled.

After the parties agreed on November 18, 2013 to proceed to arbitration that week with Mr. Roscoe, they contacted JAMS to make the necessary arrangements. The case manager at JAMS, Veronica Wightman, corresponded with counsel that same day and indicated that in order to proceed with the arbitration, it was necessary for the parties to complete certain paperwork, specifically a Stipulation and a Demand for Arbitration. (Pl.'s Ex. 7, 1/10/14). Plaintiff's counsel completed said paperwork and returned it to JAMS in short order. Attorney Ferhat, in contrast, refused to complete said paperwork. Because Attorney Ferhat refused to do so, Plaintiff's counsel requested that the Court adopt the November 18, 2013 agreement as an order of court, in order to ensure the appointment by JAMS of Mr.

Page 8 of 12

590a

Roscoe as the arbitrator in this matter for that week. (N.T. 11/20/13, p.3). Attorney Ferhat, however, objected to same, and accordingly the Court did not enter such an order. (N.T. 11/20/13, p.4). Thus, it was left to Attorney Ferhat to execute the necessary paperwork in order for JAMS to appoint Mr. Roscoe. This could have been easily accomplished by him signing the JAMS Stipulation. (Pl.'s Ex. 7, 1/10/14.) While Ms. Wightman of JAMS did indicate that "JAMS must have a document signed by the parties agreeing to have JAMS administer the arbitration, and in this case Jerry Roscoe serve as the arbitrator," she did *not* indicate that such a "document" had to be a written arbitration agreement as contemplated by Attorney Ferhat. (Pl's Ex. 12, 1/10/14). To the contrary, the Stipulation provided by JAMS is on its face such a document, wherein it states: "It is stipulated and agreed by all the Parties to submit all disputes, claims or controversies to neutral binding arbitration at JAMS, pursuant to JAMS Arbitration Administrative Policies and [...] Parties hereby agree that [Jerry P. Roscoe, Esq.] shall serve as arbitrator in this matter[.]" (Pl.'s Ex. 7, 1/10/14). Accordingly, due to his failure to sign the Stipulation, Attorney Ferhat is the only individual to blame for JAMS's inability to appoint the arbitrator in November 2013. This allegation of error is, as those before it, without merit.

**D.     At no time did this Court conclude that delay damages are awardable in a private arbitration.**

In their final assignment of error, Appellants contend that we "erred in awarding sanctions where the judge mistakenly concludes that delay damages are awardable in a private arbitration." (Statement, ¶10). This assignment of error is premised upon a mistake of fact, as the Court never made such a conclusion. To

Page 9 of 12

591a

the contrary, the Court facilitated a discussion on November 18, 2013 in which Attorney Miller for the Plaintiffs made it clear that they would not agree to arbitration in the event that they could not seek delay damages, in an amount such that the total combined award would not exceed the agreed-upon high dollar figure. The Court attempted to facilitate such an agreement. The Court stated on that date: "That's an element of damages that you can argue are appropriate or not appropriate. And let that be an issue for the arbitrator." (N.T. 11/18/13, p.8). Following which, the following discussion took place:

The Court: "[W]hat he's saying is if delay damages brings it up to [the high number,] we're entitled to delay damages. If the verdict is [the high number] and there's a request for delay, [the high number] is the cap."

Mr. Ferhat: It's what are —

Mr. Miller: This is the high whatever damages we prove or don't prove. This is the low whether we win or lose.

Mr. Ferhat: Whatever the arbitrator says, whatever that number is, that's what you agree to?

Mr. Miller: No, because you don't ask for delay damages until there's a verdict, and that's the award of the arbitrator. It can't go higher than [the high number]. If we lose, it can't go lower than [the low number]. What is so difficult about that?

The Court: Let's not do that. Come on. If the award is [the low number], and then there's a request for delay damages made, that would be within the purview of the arbitrator to award delay damages provided it's within the bounds of

Page 10 of 12

592a

the high and the low. If the award came back as [the high number], then, obviously, you won't be able to collect any delay damages because you've already hit the high. And, of course, there's always the option of a complete defense verdict. However that still would mean because it's a binding high-low that the plaintiff receives [the low number].

Mr. Ferhat:  Okay.

The Court:  Okay?

Mr. Ferhat:  Yes.

The Court:  Anything else?

Mr. Ferhat:  That's all, your Honor.

N.T. 11/18/13, pp.9-10. A review of this record clearly demonstrates that the parties reached an agreement on the issue of delay damages, and agreed that they were a recoverable element of damages.

While delay damages are clearly not recoverable pursuant to Pa.R.C.P. 238 in an arbitration such as that at issue here, that did not preclude the parties from entering into an arbitration agreement in which such damages were recoverable. The parties were free to contract as they saw fit, and in fact they did make such an agreement. The only conclusion reached by the Court with respect to delay damages was that the exclusion of them was not a part of the agreement that counsel had reached in their negotiations. Furthermore, insofar as Attorney Ferhat expressly agreed on November 18, 2013 that delay damages were available  as a potential element of damages, the Court's conclusion with respect to same is of no

Page 11 of 12

moment. (N.T. 11/18/13, pp.9-10). Accordingly, we believe this assignment of error to also be without merit.

BY THE COURT:

_Paula A. Roscid._
PAULA A. ROSCIOLI, J.

594a